# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00229-RBJ

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.  DAVITA INC.,
2.  KENT THIRY,

     Defendants.

---

## UNITED STATES' OMNIBUS MOTIONS *IN LIMINE*

---

The United States submits the following motions *in limine*.  The United States anticipates that Defendants may seek to introduce evidence and make arguments that are irrelevant in a prosecution for per se unlawful conspiracies under Section 1 of the Sherman Act, and that seek to promote jury nullification, and the United States moves to exclude any such evidence and arguments.

## GENERAL PRINCIPLES

### A.      Section 1 of the Sherman Act

To prove a per se unlawful conspiracy under Section 1 of the Sherman Act, 15 U.S.C. § 1, such as those alleged here, the United States must prove, beyond a reasonable doubt, three elements: (1) a conspiracy existed between two or more competitors to allocate the market for employees through a nonsolicitation agreement at or about the time alleged in the Indictment; (2) Defendants knowingly joined the conspiracy; and (3) the conspiracy involved interstate trade or commerce.  *See, e.g.*, *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1210 (9th Cir. 1992); *United States v. Coop. Theatres of Ohio, Inc.*, 845 F.2d 1367, 1373 (6th Cir. 1988) ("Where the court has concluded that the alleged activity amounts to a per se violation of section

1 of the Sherman Act, the government need only prove (1) the existence of the alleged agreement and (2) that defendants knowingly entered into the conspiracy.").

To act "knowingly" in joining the conspiracy means Defendants acted voluntarily and intentionally, and not because of a mistake or accident.  *See, e.g.*, *Alston*, 974 at 1210; *United States v. W.F. Brinkley & Son Constr. Co.*, 783 F.2d 1157, 1161–62 (4th Cir. 1986).  Thus, the "requisite intent" for a per se unlawful allocation conspiracy "can be proved by showing that the defendants knowingly joined and participated in the conspiracy."  *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 479–80 (10th Cir. 1990); *see also United States v. Metro. Enters., Inc.*, 728 F.2d 444, 450 (10th Cir. 1984) (holding that "the requisite intent in the instant case was satisfied by showing that the appellants knowingly joined and participated in a conspiracy to rig bids") (citing *United States v. Cargo Serv. Stations*, 657 F.2d 676, 684 (5th Cir. 1981)).  Accordingly, the United States need not show that Defendants intended to violate the law or cause any anticompetitive result; instead, the crime is the agreement, and questions of intent (beyond the intent to conspire) and effect are irrelevant.  *See, e.g.*, *United States v. Koppers Co.*, 652 F.2d 290, 295 n.6 (2d Cir. 1981) ("Where per se conduct is found, a finding of intent to conspire to commit the offense is sufficient; a requirement that intent go further and envision actual anti-competitive results would reopen the very questions of reasonableness which the per se rule is designed to avoid."); *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 7 (1st Cir. 1997) ("[D]efendants can be convicted of participation in price-fixing conspiracies without any demonstration of a specific criminal intent to violate the antitrust laws.").

### B.    Jury Nullification

"[T]here is no right to jury nullification."  *Crease v. McKune*, 189 F.3d 1188, 1194 (10th Cir. 1999).  Courts have wide latitude to exclude evidence and arguments that promote jury

nullification because a "defendant is not, of course, entitled to have the jury instructed that they

can disregard the law," *United States v. Grismore*, 546 F.2d 844, 849 (10th Cir. 1976), and

because such argument invites the jury to render a "lawless" verdict that "constitute[s] an

exercise of erroneously seized power," *United States v. Washington*, 705 F.2d 489, 494 (D.C.

Cir. 1983).  *See Chandler v. Florida*, 449 U.S. 560, 574 (1981) (explaining that courts "must be

especially vigilant" to ensure a "verdict [is] based solely upon the evidence and the relevant

law"); *United States v. Trujillo*, 714 F.2d 102, 106 (11th Cir. 1983) ("[Defendant's] jury

nullification argument would have encouraged the jurors to ignore the court's instruction and

apply the law at their caprice. . . . [N]either the court nor counsel should encourage jurors to

violate their oath."); *United States v. Gonzalez*, 596 F.3d 1228, 1237 (10th Cir. 2010) (citing

*Trujillo* and noting "we disapprove of the encouragement of jury nullification").

      The Court's power to exclude jury nullification evidence and argument—a power which

"does not deny [a defendant] the opportunity to make a legally tenable argument," *United States

v. Joseph*, 567 F. App'x 844, 849 (11th Cir. 2014)—arises from Rules 401, 402, and 403 of the

Federal Rules of Evidence.  Evidence is admissible only if it is both relevant—having "any

tendency to make a fact [of consequence in determining the action] more or less probable than it

would be without the evidence," Fed. R. Evid. 401(a)—and not otherwise inadmissible under,

inter alia, some other evidentiary rule, Fed. R. Evid. 402.  One such evidentiary rule, Rule 403,

permits the Court to "exclude relevant evidence if its probative value is substantially outweighed

by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury . . . ."  Fed. R.

Evid. 403.

      Thus, when analyzing admissibility, the first question is whether the evidence is relevant

under Rule 401 and the second question is whether the probative value of the evidence is

substantially outweighed by a danger of unfair prejudice, misleading the jury, or confusing the issues under Rule 403.  Notably, and for good reason, the tendency of evidence to promote jury nullification is not a valid consideration in the relevance determination.  *See United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("[T]he potential for nullification is no basis for admitting otherwise irrelevant evidence.").  But even in the unlikely event that jury nullification evidence has some marginal probative value, its highly prejudicial nature should almost invariably lead to its exclusion under Rule 403.  *See United States v. Rushin*, 844 F.3d 933, 939–40 (11th Cir. 2016).

## ARGUMENT

### 1.    The Court Should Exclude Evidence and Argument of Purported Procompetitive Justifications or Lack of Harm.

Because the Indictment alleges per se unlawful agreements among employers to allocate employees, the Court should exclude evidence and argument that the conspiracy was either justified by procompetitive or other reasons or did not result in harmful effects as irrelevant to the elements of the offenses or any lawful defense.  The ABA Model Criminal Antitrust Jury Instruction for Per Se Violations of the Antitrust Laws explains:

> [I]f you find that the government has met its burden with respect to each of the elements of the charged offense, you need not be concerned with whether the agreement was reasonable or unreasonable, the justifications for the agreement, or the harm, if any, done by it.  It is not a defense that the parties may have acted with good motives, or may have thought that what they were doing was legal, or that the conspiracy may have had some good results.  If there was, in fact, a conspiracy as charged in the indictment, it was illegal.

ABA Model Jury Instructions in Criminal Antitrust Cases at 54–55 (2009).  Similar jury instructions are frequently provided in antitrust prosecutions.  *See* Trial Tr. 3334–35, *United States v. Alliance Nat'l Ltd. P'ship*, 1:08-cr-00068-DCN, Dkt. 180 (N.D. Ohio June 24, 2009) ("Every conspiracy to allocate customers is unlawful, regardless of the motives of the parties or

4

any economic justification. . . .  Therefore, if you find that such a conspiracy has been established, it does not matter whether the conspiracy or agreement was reasonable or unreasonable, wise or unwise, or healthy or destructive."); *see also* Instructions at 25, *United States v. Tokai Kogyo Co.*, 1:16-cr-00063-TSB, Dkt. 235 (S.D. Ohio Nov. 6, 2017); Trial Tr. 2093, *United States v. True*, 4:97-CR-11, Dkt. 246 (W.D. Ky. Sept. 17, 1998); *United States v. Suntar Roofing Inc.*, 709 F. Supp. 1526, 1536–37 (D. Kan. 1989) ("A conspiracy to allocate customers is conduct that is unreasonable per se; that is, as a matter of law, the mere doing of the act itself (the agreement to allocate customers) constitutes an unreasonable restraint on trade or commerce, and it is not necessary to consider why the acts were committed, their effect on the industry, or any other explanatory matter."), *aff'd*, 897 F.2d 469 (10th Cir. 1990).  Because these economic and business justifications do not tend to prove or disprove any element of the offense and are not legitimate defenses to a market allocation scheme, these arguments and evidence would urge the jury to acquit Defendants for reasons that are irrelevant to the elements of the charged offense.

*Justifications*.  The Court should prohibit Defendants from introducing evidence— including expert witness testimony—and arguments that there were procompetitive or other justifications for the conspiracy.  "[W]here the per se rule applies, it is of no consequence that an agreement could potentially bring net economic benefits to some part of the market."  *United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1277 (10th Cir. 2018); *see also Suntar Roofing*, 897 F.2d at 473 (explaining that, where a per se violation is alleged, "defendants would therefore be precluded from introducing evidence of reasonableness or justification at trial"); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940) ("Whatever economic justification particular price-fixing agreements may be thought to have, the law does not permit an inquiry

into their reasonableness.").

The United States anticipates that Defendants may try to justify their conspiracy by introducing evidence in an attempt to show, or by arguing, that competitors prohibited solicitation to benefit their employees, or that employees in fact benefited from the nonsolicitation agreements, through, for example, higher salaries or better training. The United States contends that any such argument would be without merit; but even assuming a factual basis for these claims, neither would be relevant under the well-established and controlling precedent discussed above. The relevant questions for the jury are whether the charged conspiracies existed, whether Defendants knowingly entered them, and whether they involved interstate commerce. *See, e.g.*, *Alston*, 974 F.2d at 1210. Evidence and arguments by Defendants that the conspiracies were reasonable or justifiable is irrelevant for a per se offense; and, to the extent Defendants could offer any argument for the relevance of such evidence, any marginal relevance would be substantially outweighed by the likelihood the evidence would be unduly prejudicial, mislead the jury, and confuse the issues. *See* Fed. R. Evid. 403. The danger in this case is that Defendants may mislead a jury into believing that they are not criminally liable because their proffered justifications are reasonable. This would effectively encourage jurors to ignore the law. Accordingly, because evidence and argument justifying Defendants' nonsolicitation scheme is not relevant, and, even if marginally relevant, would be highly prejudicial, confusing, and misleading, the United States moves to exclude such evidence.

*Lack of Harm.* The Court should similarly prohibit Defendants from introducing evidence—including expert evidence—attempting to show, or arguing that, the conspiracy was not unlawful absent harmful effects, including because particular employees received promotions or salary increases, or because there were a large number of alternative competing employers not

part of Defendants' scheme.  "Conspiracies under the Sherman Act are . . . not dependent on the 'doing of any act other than the act of conspiring' as a condition of liability." *Socony-Vacuum*, 310 U.S. at 252 (quoting *Nash v. United States*, 229 U.S. 373, 378 (1913)); *see also United States v. Reicher*, 983 F.2d 168, 172 (10th Cir. 1992) ("[T]he determination of a per se antitrust violation depends on whether there was an agreement to subvert the competition, not on whether each party to the scam could perform.").  It follows that evidence of a lack of harm does not absolve Defendants of liability, as district courts routinely instruct juries. *See, e.g.*, Trial Tr. 3332, *Alliance*, 1:08-cr-00068-DCN ("[I]f you find that the -- that a conspiracy charged in Count 1 of the superseding indictment existed, and a Defendant was a member of that conspiracy, you need not be concerned with whether the agreement was reasonable or unreasonable, or the justifications for the agreement, or the harm done by it.").  And courts routinely instruct that it is not "a defense that the conspirators did not attempt to collude with all of their competitors." Instructions, Instr. No. 16 at 24–26, *United States v. Peake*, No. 3:11-cr-00512, Dkt. 186 (D.P.R. Jan. 25, 2013); Instructions, Instr. No. 19 at 21–22, *United States v. Lischewski*, No. 18-cr-00203, Dkt. 626 (N.D. Cal. Dec. 2, 2019); *cf. United States v. McKesson & Robbins, Inc.*, 351 U.S. 305, 310 (1956) (holding that, in a per se conspiracy, "[i]t makes no difference . . . whether the participants possess market control").  And even assuming the effects were limited, it would not "matter that the alleged agreement would only affect a small number of potential [employees]." *Kemp*, 907 F.3d at 1277.  Allowing Defendants to put on what amounts to a "no harm, no foul" defense would complicate and prolong the trial with irrelevant evidence and even expert testimony and risk the jury acquitting for reasons that are unrelated to the elements of the charged offense.

*Expert Evidence*.  For the same reasons, Defendants' proposed economic expert, Dr.

Pierre-Yves Cremieux, should be prohibited from providing expert evidence in an effort to show procompetitive justifications for, or lack of harm resulting from, the nonsolicitation agreements.[1]

> **2.     The Court Should Exclude Evidence and Argument of Defendants' Claimed Procompetitive or Good Intentions.**

The Court should exclude evidence and argument that Defendants had procompetitive or other good intentions, including a motivation to benefit employees in entering the charged conspiracies.  Any defense premised on Defendants' purported good intentions is not relevant in a case charging a per se illegal conspiracy.  *See United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972) ("The Court has consistently rejected the notion that naked restraints of trade are to be tolerated because they are well intended or because they are allegedly developed to increase competition."); *McKesson*, 351 U.S. at 309–10 ("It makes no difference whether the motives of the participants are good or evil"); *Socony-Vacuum*, 310 U.S. at 221–22 (explaining the Sherman Act does not allow as justifications "the good intentions of the members of the combination").  Courts routinely offer jury instructions on this point in antitrust prosecutions. *See* Trial Tr. 3332, *Alliance*, 1:08-cr-00068-DCN, Dkt. 180 ("It is not a defense that the parties thereto may have acted with good motives . . . ."); *see also* Instructions at 25, *Tokai Kogyo*, 1:16-cr-00063-TSB, Dkt. 235; Trial Tr. 2093, *True*, 4:97-CR-11, Dkt. 246; *Suntar Roofing*, 709 F. Supp. at 1537 ("[I]t is not necessary to consider why the acts were committed."), *aff'd*, 897 F.2d 469 (10th Cir. 1990).

The United States anticipates that Defendants may claim they had good intentions in reaching the nonsolicitation agreements, because, for example, such agreements would facilitate

---

[1] The United States' additional bases for moving to exclude certain expert testimony from Dr. Cremieux are discussed separately.  *See* United States' Motion To Exclude Defendants' Expert (ECF No. 106).

greater investment in employees.  Even if true, that is not a valid defense to a per se charge of
market allocation, and, therefore, evidence of good intentions should be excluded under Rule
402.  Even if marginally relevant, such evidence would be unduly prejudicial, mislead the jury,
and confuse the issues, and should be excluded under Rule 403.

### 3.    The Court Should Exclude Evidence and Argument of Defendants' Claimed Good Character.

*Character Generally.*  The Court should exclude evidence and argument from Defendants
introducing reputation or opinion evidence that Defendants are generous, charitable, civic-
minded, patriotic, family-oriented, religious, community participants, or attentive to employee
professional development.  Evidence that a defendant possesses certain favorable character traits
is admissible only when the trait is "pertinent" to the offense charged.  Fed. R. Evid.
404(a)(2)(A); *see, e.g.*, *United States v. Santana-Camacho*, 931 F.2d 966, 967–68 (1st Cir. 1991)
(Breyer, C.J.).  But a defendant may not provide evidence of possessing a generally good
character.  *See United States v. Camejo*, 929 F.2d 610, 613 (11th Cir. 1991) (court properly
excluded proffered testimony "to portray [defendant as having] a good character").  Such
evidence only promotes jury nullification and is not allowable.  *See Joseph*, 567 F. App'x at 849
("[W]hen the district court restricted defense counsel's comments about [defendant]'s honor and
social contributions—comments that were part of his jury nullification efforts—the court did not
deny [defendant] the opportunity to make a legally tenable argument.  Instead, it kept him from
making impermissible arguments.").  Because none of the above characteristics are relevant to
the charged offenses—including because good intentions would not excuse a per se unlawful
conspiracy under Section 1 of the Sherman Act, *see Topco Assocs., Inc.*, 405 U.S. at 610, and
ignorance of the law is no defense, *Nippon Paper Indus.*, 109 F.3d at 7—the Court should
exclude any evidence and argument addressing these character traits.

*Specific Instances of Conduct.*  The Court should also exclude evidence and argument of specific instances of Defendants' good character, including caring for family members, donations, provision of free or reduced-price healthcare services, attending religious services, performing charitable or civic work, other forms of generosity, or attentiveness to employee professional development.  Rule 405(b) makes clear that unless a defendant's character or character trait is "an essential element of a charge, claim, or defense," he may not offer evidence of specific instances of good conduct.  Fed. R. Evid. 405(b); *see also United States v. Talamante*, 981 F.2d 1153, 1156 (10th Cir. 1992); *United States v. McMahan*, 394 F. App'x 453, 463 (10th Cir. 2010).  Because none of the above instances of good conduct are relevant to an essential element of a charge, claim, or defense in this case, evidence of such should be excluded.  *See United States v. Bernard*, 299 F.3d 467, 476 (5th Cir. 2002) (approving court's sentencing instruction that jurors should not "consider the religious views of the defendants"); *Santana-Camacho*, 931 F.2d at 967 (excluding evidence that defendant was a good family man and a kind man because it was not a trait relevant to the offense); *United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (holding evidence of "bravery, attention to duty, perhaps community spirit" were "hardly 'pertinent' to the [charged] crimes"); *United States v. Morison*, 622 F. Supp. 1009, 10111 (D. Md. 1985) (holding "patriotism" was not a relevant trait to the charged offense).

### 4.    The Court Should Exclude Evidence and Argument of Potential Penalties and Consequences of a Conviction.

The Court should exclude evidence and argument of the potential penalties or consequences Defendants face if they are convicted, including: (a) the maximum penalties; (b) the collateral impact on Defendant DaVita's business, including the confidence and trust of its customers; (c) that Defendant Thiry could be incarcerated; (d) that Defendant Thiry would

become a felon and could be prohibited from obtaining some types of jobs or lose certain rights; and (e) any mention of Defendant Thiry's family.

"[A] jury has no sentencing function" and "should be admonished to reach its verdict without regard to what sentence might be imposed." *Shannon v. United States*, 512 U.S. 573, 579 (1994) (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)) (internal quotation marks omitted); *see also United States v. Courtney*, 816 F.3d 681, 686 (10th Cir. 2016). "[P]roviding jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Shannon*, 512 U.S. at 579. Therefore, the only purpose of that evidence is jury nullification, and, as such, it should be excluded under Rules 402 and 403. *See United States v. Greer*, 620 F.2d 1383, 1384 (10th Cir. 1980) ("The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial."); *United States v. Gutierrez*, 2010 WL 11483796, at *2 (D.N.M. Apr. 19, 2010) (holding that jury instruction on mandatory minimum is "inappropriate as it improperly references the punishment that Defendant may face if convicted and would encourage jury nullification contrary to Tenth Circuit and Supreme Court case law."). Indeed, the Tenth Circuit pattern jury instructions are unequivocal on this point: "If you find the defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict." Tenth Circuit Criminal Pattern Jury Instructions, Instruction No. 1.20 (2021).[2] Similar instructions are common in antitrust prosecutions. *See* Trial Tr. 2467–68, *United States*

---

[2] The United States intends to call at least one immunized witness and recognizes that the defense may be able to explore on cross-examination the statutory maximum sentences to which those witnesses were exposed. Any effort to highlight the sentences to which Defendants are exposed, however, should be prohibited.

11

*v. Usher*, 17-cr-00019-RMB, Dkt. 239 (S.D.N.Y. Oct. 25, 2018) ("[Y]ou should not consider the question of possible punishment in the event that you were to find the defendants you are considering guilty. . . .  It is not your concern and you should not give any consideration to that issue in determining what your verdict will be."); *see also* Instructions at 9, *United States v. Johnson*, No. H-92-152 (S.D. Tex. Mar. 10, 1994).

Accordingly, evidence and argument related to the consequences of a conviction—including harm to the business, reputational or professional damage to Defendants, and adverse consequences to Defendants' employees or patients, or to Defendant Thiry's family—would encourage jury nullification and should be excluded.  This includes references to Defendant Thiry's family.  Given that Defendant Thiry's family members have nothing to do with the substance of the case, any reference to them (including introducing Defendant Thiry as a "family man" or the like in the defense opening) will serve no purpose other than to suggest that the jury should acquit Defendant Thiry to spare his family from the negative consequences of conviction.

Because any evidence and arguments related to potential penalties or consequences Defendants face are irrelevant and would only encourage jury nullification, they should be excluded.

5. **The Court Should Exclude Evidence and Argument of United States' Charging Decisions in This and Other Cases.**

The Court should exclude evidence and argument of the United States' charging decisions in this and other cases, including how these charges compare to those brought in other cases, or the absence of charges in other matters perceived to be factually similar.

The United States anticipates Defendants may seek to introduce evidence and argument claiming this prosecution is the first of its kind.  This is a jury nullification argument, and should be precluded.  *See United States v. Reed*, 641 F.3d 992, 993–94 (8th Cir. 2011) (collecting cases

12

and observing that "[s]everal circuits have unanimously upheld the exclusion of evidence of prior charging decisions on the ground that many factors unrelated to guilt may influence those decisions and their admission therefore risks misleading the jury and confusing the issues"). Moreover, a "selective-prosecution claim is not a defense on the merits to the criminal charge." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). These principles are expressed in the Tenth Circuit pattern jury instructions: "It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged. The fact that another person *also* may be guilty is no defense to a criminal charge. The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crime charged." Tenth Circuit Criminal Pattern Jury Instructions, Instruction No. 1.19. Similar instructions are routinely given in antitrust trials. *See* Trial Tr. 3325–26, *United States v. DeMilta*, 1:08-cr-00068-DCN, Dkt. 180 (N.D. Ohio June 24, 2009) ("[W]hether anyone else should be prosecuted and convicted for this crime or any other crime is not a proper matter for any jury to consider. The possible guilt of others is no defense to a criminal charge. . . . So do not let the possible guilt of others influence your decision in any way."); *cf.* Instructions at 9, *United States v. Johnson*, No. H-92-152 (S.D. Tex. Mar. 10, 1994) ("The indictment refers to alleged co-conspirators and corporate co-conspirators who were not included in the indictment. You should not be concerned with or speculate about why alleged co-conspirators have not been included.").

While the United States does not, through this motion, seek to exclude evidence of charging decisions relating to cooperating witnesses for the limited purpose of impeaching the credibility of each witness's testimony, any other evidence and argument related to the United States' charging decisions would be irrelevant and prejudicial, and should be excluded.

Likewise, the Court should specifically exclude any argument or insinuation that the United States' charging decisions were unfair or otherwise improper.

### 6.   The Court Should Exclude Evidence and Argument of Defendants' Claimed Ignorance of the Law.

Lastly, the Court should exclude evidence and argument from Defendants that they were ignorant of the Sherman Act or the illegality of the charged nonsolicitation agreements.

"The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." *Cheek v. United States*, 498 U.S. 192, 199 (1991). While exceptions to the general rule exist, they are exclusively in those cases where a statute requires a mens rea of something more than general intent. *See United States v. Duran*, 596 F.3d 1283, 1292 (11th Cir. 2010) (holding that because the only mens rea required was general intent, ignorance of the law cannot be a defense). But per se violations of the Sherman Act, such as those alleged here, are general intent crimes, where the "Government need only prove that [the defendant] knew the general nature and scope of the conspiracy." *United States v. Anderson*, 326 F.3d 1319, 1329 (11th Cir. 2003); *see also Suntar Roofing*, 897 F.2d at 479–80 ("The requisite intent can be proved by showing that the defendants knowingly joined and participated in the conspiracy."); *Nippon Paper Indus.*, 109 F.3d at 7 ("[D]efendants can be convicted of participation in price-fixing conspiracies without any demonstration of a specific criminal intent to violate the antitrust laws."). Courts routinely instruct juries in antitrust prosecutions that ignorance of the law is no defense. *See* Trial Tr. 2145, *United States v. Aiyer*, 18-cr-00333-JGK, Dkt. 180 (S.D.N.Y. Nov. 20, 2019), ("[T]he fact that the defendant believed in good faith that what was being done was not unlawful is not a defense."); *see also* Trial Tr. 2456 *Usher*; 17-cr-00019-RMB, Dkt. 239; Instructions, Instr. No. 27 at 31, *Lischewski*, No. 18-cr-00203, Dkt. 626; Trial Tr. 217, *United States v. Romer*, No. 96-350-A (E.D. Va. Jan. 21,

1997); Trial Tr. 4719, *United States v. AU Optronics Corp.*, 09-cr-00110-SI, Dkt. 822 (N.D. Cal. Feb. 27, 2012).

Because ignorance of the law is not a defense to a per se antitrust offense, any evidence and argument that Defendants did not know—or could not have known—that the charged conduct was illegal, should be excluded.

## CONCLUSION

For the foregoing reasons, the motions *in limine* should be granted.

DATED: December 17, 2021                     Respectfully submitted,

                                             */s/ Anthony W. Mariano*
                                             Anthony W. Mariano, Trial Attorney
                                             Megan S. Lewis, Assistant Chief
                                             Sara M. Clingan, Trial Attorney
                                             William J. Vigen, Trial Attorney
                                             Terence A. Parker, Trial Attorney
                                             U.S. Department of Justice, Antitrust Division
                                             Washington Criminal II Section
                                             450 Fifth Street, N.W.
                                             Washington, D.C. 20530
                                             Tel: 202-598-2737 / 202-598-8145 / 202-480-1951 /
                                             202-353-2411 / 202-705-6156
                                             FAX: 202-514-9082
                                             E-mail: anthony.mariano@usdoj.gov /
                                             megan.lewis@usdoj.gov / sara.clingan2@usdoj.gov /
                                             william.vigen@usdoj.gov / terence.parker2@usdoj.gov

## CERTIFICATE OF CONFERENCE

In compliance with Local Rule 7.1(a), the United States has conferred with counsel for DaVita and Thiry regarding each of these motions *in limine* on December 14, 2021, and DaVita and Thiry confirmed that they oppose these motions.

## CERTIFICATE OF SERVICE

On December 17, 2021, I filed this document with the Clerk of the Court using CM/ECF, which will serve this document on all counsel of record.

                                             */s/ Anthony W. Mariano*
                                             Anthony W. Mariano, Trial Attorney