**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 21-cr-0229-RBJ

UNITED STATES OF AMERICA,

                Plaintiff,

v.

      1.  DAVITA INC.,

      2.  KENT THIRY,

                Defendants.

---

**JOINT SET OF PROPOSED FINAL JURY INSTRUCTIONS**

---

Pursuant to Federal Rule of Criminal Procedure 30 and the Court's Criminal Practice Standards, the United States and the Defendants submit these proposed jury instructions. Each instruction to which the United States and Defendants have agreed is designated "Stipulated Instruction" in the heading.  For each "Disputed Instruction," each party has provided its authority for its version of the instruction in this document, and is providing argument in a separate supporting memorandum filed contemporaneously, as set forth in this Court's order dated February 4, 2022, ECF No. 134.  Further, in accordance with this Court's order dated February 22, 2022, ECF No. 170, the parties will email chambers a word version that visibly highlights the material differences in the "Disputed Instructions."  The parties will also provide this Court with courtesy copies of a single binder including this Joint Set of Proposed Final Jury Instructions, as well as the parties' memoranda in support of their proposed "Disputed Instructions."

The parties respectfully reserve the right to supplement, withdraw, or modify these requests depending upon what arises during the course of trial, including based on the evidence presented, the arguments of counsel, and subsequent requests for instructions, if any, filed by the opposing party.

The portions in square brackets are included for the Court's consideration, to be included or modified depending on what occurs at trial.

## **Contents**

Disputed Instruction No. 1: Substantive Preliminary Instruction (Offered by the United States) . 6

Disputed Instruction No. 1: Preliminary Jury Instruction (Offered by Defendants) ..................... 7

Stipulated Instruction No. 2: Introduction to Final Jury Instructions ........................................... 14

Stipulated Instruction No. 3: Duty to Follow Instructions ........................................................... 15

Stipulated Instruction No. 4: Presumption of Innocence—Burden of Proof—Reasonable Doubt 16

Stipulated Instruction No. 5: Evidence—Defined—Direct and Circumstantial—Inferences ...... 17

Stipulated Instruction No. 6: Credibility of Witnesses ................................................................ 19

[Stipulated Instruction No. 7: Non-Testifying Defendant(s)] ....................................................... 21

Disputed Instruction No. 8: Statements By Defendant (Offered by the United States) ............... 22

Disputed Instruction No. 8: Statements By Defendant (Offered by Defendants)......................... 23

[Stipulated Instruction No. 9: Evidence of Good Character]......................................................... 24

[Disputed Instruction No. 10: Impeachment by Prior Inconsistencies (Offered by the United States)] ......................................................................................................................................... 25

[Disputed Instruction No. 10: Impeachment Evidence – Witness (Offered by Defendants)] ...... 26

Disputed Instruction No. 11: Testimony of Certain Witnesses—Immunity (Offered by the United States).......................................................................................................................................... 27

Disputed Instruction No. 11: Immunity (Offered by Defendants)................................................. 29

[Disputed Instruction No. 12: Expert and Opinion Testimony (Offered by the United States)] .. 31

[Disputed Instruction No. 12: Expert and Opinion Testimony (Offered by Defendants)] ........... 32

[Disputed Instruction No. 13: Summary/Overview Witnesses (Offered by the United States)].. 33

[Disputed Instruction No. 13: Summary/Overview Witnesses (Offered by Defendants)] ........... 34

[Stipulated Instruction No. 14: Charts and Summaries] ............................................................... 36

Stipulated Instruction No. 15: References by Counsel .................................................................. 37

[Stipulated Instruction No. 16: Similar Acts] ............................................................................... 38

Disputed Instruction No. 17: Multiple Defendants—Multiple Counts (Offered by the United States).......................................................................................................................................... 39

Disputed Instruction No. 17: Multiple Defendants – Multiple Counts (Offered by Defendants) 40

Stipulated Instruction No. 18: Corporate Defendant .................................................................... 41

Stipulated Instruction No. 19: Consider Only Crimes Charged .................................................... 43

Stipulated Instruction No. 20: Markings on Documents ............................................................... 44

Stipulated Instruction No. 21: Equality of Parties .................................................................... 45

Disputed Instruction No. 22: Section 1 of the Sherman Act and the Charge (Offered by the United States)...................................................................................................................... 46

Disputed Instruction No. 22: Section 1 of the Sherman Act and the Charge (Offered by Defendants).......................................................................................................................... 48

Disputed Instruction No. 23: Elements of a Section 1 Offense (Offered by the United States)... 49

Disputed Instruction No. 23: Elements of the Offense (Offered by Defendants)........................ 50

Disputed Instruction No. 24: On or About—Period of the Conspiracy (Offered by the United States)................................................................................................................................. 52

Disputed Instruction No. 24: On or About (Offered by Defendants) ........................................... 53

Stipulated Instruction No. 25: Conspiracy................................................................................... 54

Disputed Instruction No. 26: Evidence of Similarity (Offered by the United States) ................. 56

Disputed Instruction No. 26: Evidence of Similarity (Offered by Defendants) .......................... 57

Disputed Instruction No. 27: Conspiracy to Allocate Employees (Offered by the United States)58

Disputed Instruction No. 27: Market Allocation (Offered by Defendants) ................................. 61

Disputed Instruction No. 28: Alleged Notice and Confirmation Requirements (Offered by the United States)...................................................................................................................... 64

Disputed Instruction No. 28: Alleged Notice and Confirmation Requirements (Offered by Defendants).......................................................................................................................... 65

Disputed Instruction No. 29: Knowingly Joined (Offered by the United States)........................ 67

Disputed Instruction No. 29: "Knowingly" Joining the Conspiracy (Offered by Defendants).... 71

[Disputed Instruction No. 30: Statements Indicating Consciousness of Guilt (Offered by the United States)] ..................................................................................................................... 73

[Disputed Instruction No. 30: Statements Indicating Consciousness of Guilt (Offered by Defendants)].......................................................................................................................... 75

Disputed Instruction No. 31: Interstate Commerce (Offered by the United States)..................... 76

Authorities.................................................................................................................................... 77

Disputed Instruction No. 31: Interstate Commerce (Offered by Defendants) ............................. 78

Disputed Instruction No. 32: Statute of Limitations (Offered by the United States) .................. 79

Disputed Instruction No. 32: Statute of Limitations (Offered by Defendants)............................ 80

Disputed Instruction No. 33: Defense Theory of the Case (Offered by the United States).......... 81

Disputed Instruction No. 33: Defense Theory of the Case (Offered by Defendants)................... 82

[Stipulated Instruction No. 34: Good Faith] .................................................................... 83

Stipulated Instruction No. 35: Punishment ...................................................................... 84

Stipulated Instruction No. 36: Duty to Deliberate—Verdict Form................................. 85

Stipulated Instruction No. 37: Communication with the Court ...................................... 87

[Disputed Instruction No. 38: Modified *Allen* Instruction (Offered by the United States)] ......... 88

[Disputed Instruction No. 38: Modified *Allen* Instruction (Offered by Defendants)] .................. 90

[Disputed Instruction No. 39: Partial Verdict Instruction (Offered by the United States)].......... 91

[Disputed Instruction No. 39: Partial Verdict Instruction (Offered by Defendants)].................. 92

**Disputed Instruction No. 1: Substantive Preliminary Instruction (Offered by the United States)**

In order to establish the offense of conspiracy to allocate employees charged in the Superseding Indictment, the government must prove each of these elements beyond a reasonable doubt:

1. A conspiracy between two or more competitors for employees to allocate employees as alleged in the Superseding Indictment existed on or about the time period alleged in the Superseding Indictment.

2. The defendant knowingly—that is, voluntarily and intentionally—joined the conspiracy; and

3. The conspiracy involved interstate trade or commerce.

---

**Authority**

15 U.S.C. § 1; Elements of the Offense, ABA Model Jury Instructions in Criminal Antitrust Cases (2009 ed.), Chapter 3 – the Sherman Act Section 1 Offense – ABA Section of Antitrust Law; *United States v. Metro. Enters., Inc.*, 728 F.2d 444 (10th Cir. 1984); *United States v. Kemp & Assocs.*, 907 F.3d 1264, 1273 (10th Cir. 2018); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469 (10th Cir. 1990).

**Disputed Instruction No. 1: Preliminary Jury Instruction (Offered by Defendants)**

Members of the Jury: At the end of the trial, I will give you detailed guidance on the law and on how you will go about reaching your decision. But now I simply want to generally explain how the trial will proceed.

This criminal case has been brought by the U.S. Department of Justice's Antitrust Division, which I will sometimes refer to as the government or the prosecution.  The government is represented by [TK]. Defendant DaVita Inc. is represented by [TK].  Defendant Kent Thiry is represented by [TK].  Kent Thiry is the former CEO of DaVita and is now retired from the company.

Count One of the indictment charges each defendant with a conspiracy with Surgical Care Affiliates to allocate the market for senior executives across the United States beginning at least as early as February 2012 and continuing at least as late as July 2017.

Count Two of the indictment charges each defendant with a conspiracy with [Company B] to allocate the market for employees across the United States beginning at least as early as April 2017 and continuing at least as late as June 2019.

Count Three of the indictment charges each defendant with a conspiracy with [Company C] to allocate the market for employees across the United States beginning at least as early as November 2013 and continuing until at least as late as June 2019.

The indictment is the description of the charges made by the government against the defendants; it is not evidence of guilt or anything else. Each defendant has pleaded not guilty and is presumed innocent. A defendant may not be found guilty by you unless all twelve of you unanimously find that the government has proved the company or Mr. Thiry's guilt beyond a

reasonable doubt. There are two defendants in this case, and you will have to give separate consideration to the case against each defendant.

The first step in the trial will be the opening statements. The government in its opening statement will tell you about the evidence which it intends to put before you. Just as the indictment is not evidence, neither is the opening statement. Its purpose is only to help you understand what the evidence will be. It is a road map to show you what is ahead. After the government's opening statement, each defendant may make an opening statement.

Evidence will be presented from which you will have to determine the facts. The evidence will consist of the testimony of the witnesses, documents and other things received into the record as exhibits, and any facts about which the lawyers agree or to which they stipulate.

The government will offer its evidence. After the government's evidence, each defendant may present evidence, but no defendant is required to do so. I remind you that each defendant is presumed innocent and it is the government that must prove each defendant's guilt beyond a reasonable doubt. If the defendants submit evidence, the government may introduce rebuttal evidence.

At times during the trial, a lawyer may make an objection to a question asked by another lawyer or to an answer by a witness. This simply means that the lawyer is requesting that I make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. If I sustain an objection to a question, the witness may not answer it. Do not attempt to guess what answer might have been given if I had allowed the answer. If I overrule the objection, treat the answer as any other. If I tell you not to consider a particular statement, you may not refer to that statement in your later deliberations. Similarly, if I tell you

to consider a particular piece of evidence for a specific purpose, you may consider it only for that purpose.

During the course of the trial, I may have to interrupt the proceedings to confer with the attorneys about the rules of law that should apply. Some of these conferences may take more time, so I will excuse you from the courtroom. I will try to avoid such interruptions whenever possible, but please be patient even if the trial seems to be moving slowly because conferences often actually save time in the end.

You are to consider all the evidence received in this trial. It will be up to you to decide what evidence to believe and how much of any witness's testimony to accept or reject.

After you have heard all the evidence, I will instruct you on the rules of law which you are to use in reaching your verdict. The government and each defendant will then each be given time for their final arguments.

Let me give you some information about whether or not you choose to take notes. If you would like to take notes during the trial, you may. On the other hand, you are not required to take notes.

If you do decide to take notes, be careful not to get so involved in note taking that you become distracted from the trial and remember that your notes will not necessarily reflect exactly what was said, so your notes should be used only as memory aids. Therefore, you should not give your notes precedence over your independent recollection of the evidence. You should also not be unduly influenced by the notes of other jurors. If you do take notes, leave them in the jury room at night and do not discuss the contents of your notes until you begin deliberations.

I permit jurors to ask questions of witnesses or of the lawyers. If you have a question, I will ask you to write it down and give it to me, and I will decide whether to ask the question after conferring with the parties' counsel.  However, if you are unable to hear a witness or a lawyer, please raise your hand immediately and I will see that this is corrected.

Each defendant is charged in the indictment with three violations of 15 U.S.C. § 1 of the Sherman Act. This law makes it a crime to unreasonably restrain trade. The indictment charges the defendants with three separate conspiracies to allocate markets.  Count One of the indictment charges each defendant with a conspiracy with Surgical Care Affiliates to allocate the market for senior executives across the United States beginning at least as early as February 2012 and continuing at least as late as July 2017.  Count Two of the indictment charges each defendant with a conspiracy with [Company B] to allocate the market for other employees across the United States beginning at least as early as April 2017 and continuing at least as late as June 2019.  Count Three of the indictment charges each defendant with a conspiracy with [Company C] to allocate the market for other employees across the United States beginning at least as early as November 2013 and continuing until at least as late as June 2019.

To find a defendant guilty of these crimes, you must be convinced that the government has proved, for each count, each of the following elements beyond a reasonable doubt:

*First*: that defendants entered into an agreement with a competitor to allocate the market for senior executives (Count 1) and other employees (Counts 2 and 3) at or about the times alleged;

*Second*: that defendants entered into each charged agreement with the intent and purpose of allocating the market for senior executives (Count 1) or other employees (Counts 2 and 3); and

*Third*: that the conspiracy affected interstate commerce.

Defendants deny the Government's allegations and contend the evidence will show there were no conspiracies with the purpose to allocate the market for senior executives, as alleged in Count 1, or for all employees, as alleged in Counts 2 and 3, and that the defendants did not intend to allocate any such markets.  Specifically, according to the defendants, the alleged the non-solicitation agreements described by the government did not have the purpose or shared goal of allocating any market for employees.  Rather, the defendants believe the evidence will show they did not act with any unlawful purpose with respect to each of the alleged non-solicitation agreements and that they and their alleged co-conspirators, along with many other employers all over the country, competed for each other's employees throughout the time periods described by the government.

During the course of the trial, you should not talk with any witness, or with any of the defendants, or with any of the lawyers at all. In addition, during the course of the trial you should not talk about the trial with anyone else, whether in person, on a podcast, on the web, or on any social media platform. Also, you should not discuss this case among yourselves until I have instructed you on the law and you have gone to make your decision at the end of the trial. It is important that you wait until all the evidence is received and you have heard my instructions on the controlling rules of law before you deliberate among yourselves. Let me add that during the course of the trial you will receive all the evidence you properly may consider to decide the case.

Because of this, you should not attempt to gather any information on your own that you think might be helpful. Do not engage in any outside reading or research on this case, including through use of the internet, cell phones, smart phones, or paper resources.

Do not attempt to visit any places mentioned in the case, and do not in any other way try to learn about the case outside the courtroom.

Now that the trial has begun you must not listen to or read about it in the media or in social media. The reason for this is that your decision in this case must be made solely on the evidence presented at the trial.

The court reporter is making stenographic notes of everything that is said. This is basically to assist any appeals. However, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits will be available to you during your deliberations. With that introduction, the government may present its opening statement.

---

## Authority

Minute Order, Preliminary Instruction Before Trial, *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Oct. 8, 2021) (modified), Dkt. 611; Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 17, 35-44 (modified); Order on Defendants' Motion to Dismiss, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Jan. 28, 2022), Dkt. 132 at 18-19 ("[A]t trial, the government will not merely need to show that the defendants entered the non-solicitation agreement and what the terms of the agreement were. It will have to prove beyond a reasonable doubt that defendants entered into an agreement with the purpose of

allocating the market for senior executives (Count 1) and other employees (Counts 2 and 3). …
Similarly, [] the government will have to prove more than that defendants had entered into a non-
solicitation agreement—it will have to prove that the defendants intended to allocate the market
as charged in the indictment."); *id.* at 5 ("the [Supreme] Court has 'reiterated time and time
again' that naked horizontal market allocation agreements have no purpose but to stifle
competition") (quoting *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 08 (1972)); Final Jury
Instructions, *United States v. Lischewski*, 3:18-cr-00203 (N.D. Cal. Dec. 2, 2019), Dkt. 626 at 25
(Instruction No. 22 Theory of Defense); Jury Charge, *United States v. Usher et. al*, 1:17-cr-
00019 (S.D.N.Y Nov. 8, 2018), Dkt. 239 (Tr. at 2459:24-2460:6).

**Stipulated Instruction No. 2: Introduction to Final Jury Instructions**

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

---

**Authority**

Tenth Circuit Criminal Pattern Jury Instruction 1.03 (2021, ed).

**Stipulated Instruction No. 3: Duty to Follow Instructions**

You, as jurors, are the judges of the facts. But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

---

**Authority**

Tenth Circuit Criminal Pattern Jury Instruction 1.04 (2021, ed).

**Stipulated Instruction No. 4: Presumption of Innocence—Burden of Proof—Reasonable Doubt**

The government has the burden of proving each defendant guilty beyond a reasonable doubt.  The law does not require a defendant to prove his or its innocence or produce any evidence at all.  The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.  There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt.  It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt.  A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case.  If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find the defendant guilty.  If on the other hand, you think there is a real possibility that he is not guilty, you must give the defendant the benefit of the doubt and find him not guilty.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.05 (2021 ed.) (updated Apr. 2, 2021) (modified).

**Stipulated Instruction No. 5: Evidence—Defined—Direct and Circumstantial—Inferences**

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence.  My legal rulings are not evidence.  And my comments and questions are not evidence.

However, while you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience.  An inference is a conclusion that reason and common sense may lead you to draw from facts which have been proved.

By permitting such reasonable inferences, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the testimony and evidence in this case.

[Sometimes evidence was admitted only for a particular purpose and not generally for all purposes.  For the limited purpose for which this evidence has been received you may give it such weight as you feel it deserves.  You may not, however, use this evidence for any other purpose not specifically mentioned.]

There are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a chain of facts which point to the existence or non-existence of certain other facts.

As a general rule, the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts in accord with all the evidence in the case, both direct and circumstantial.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

---

**Authority**

Tenth Circuit Pattern Jury Instruction Nos. 1.06 and 1.07 (2021 ed.) (updated Apr. 2, 2021) (modified); Final Jury Instructions, Instr. No. 4, *United States v. Harmon*, No. 1:18-cr-00270 (D. Colo. May 9, 2019), ECF 78 (Jackson, J.); Final Jury Instructions, Instr. No. 4, *United States v. Wu*, No. 1:18-cr-00293 (D. Colo. Apr. 12, 2019), ECF 73 (Jackson, J.); Final Jury Instructions, Instr. No. 4, *United States v. Coddington*, No. 1:15-cr-00383 (D. Colo. July 25, 2018), ECF 234 (Jackson, J.).

**Stipulated Instruction No. 6: Credibility of Witnesses**

I remind you that it is your job to decide whether the government has proved the guilt of the defendants beyond a reasonable doubt.  In doing so, you must consider all of the evidence.  This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony.  An important part of your job will be making judgments about the testimony of the witnesses [including the defendant] who testified in this case.  You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was.  In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest?  Did the witness have any particular reason not to tell the truth?  Did the witness have a personal interest in the outcome in this case?  Did the witness have any relationship with either the government or the defense?  Did the witness seem to have a good memory?  Did the witness clearly see or hear the things about which he/she testified?  Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?  Did the witness's testimony differ from the testimony of other witnesses?  When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection—like failure of recollection—is not uncommon.

[You have heard the testimony of [state, local, and] federal law enforcement officials.  The fact that a witness may be employed by the federal[, state or local] government as a law

enforcement official does not mean that the witness's testimony is deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.]

[Defendant Kent Thiry has testified.  You should treat this testimony just as you would the testimony of any other witness.]

In reaching a conclusion on particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

---

### Authorities

Tenth Circuit Criminal Pattern Jury Instruction 1.08 (2021, ed); Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 8-9; United States' Proposed Jury Instructions, *United States v. Aiyer*, No. 18-cr-333, Dkt. 122 (S.D.N.Y. Oct. 1, 2019) at 36 (Request No. 22 – Law Enforcement Witness); Jury Instructions, *United States v Lischewski,* 3:18-cr-00203 (N.D. Cal. Dec. 2, 2019), Dkt. 626 at 4 (Jury Instruction No. 3 – Defendant's Decision to Testify).

**[Stipulated Instruction No. 7: Non-Testifying Defendant(s)]**

Defendant Thiry did not testify and I remind you that you cannot consider his decision not to testify as evidence of guilt. You must understand that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify. That is a constitutional right in this country, it is very carefully guarded, and you must not presume or infer guilt from the fact that a defendant does not take the witness stand and testify [or call any witnesses].

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.08.1 (2021 ed.) (updated Apr. 2, 2021) (modified).

**Disputed Instruction No. 8: Statements By Defendant (Offered by the United States)**

The United States opposes this instruction in its entirety as redundant to the parties' stipulated instructions on evidence and credibility.

**Disputed Instruction No. 8: Statements By Defendant (Offered by Defendants)**

You have heard testimony that the defendant made a statement. It is for you to decide (1) whether the defendant made the statement, and (2) if so, how much weight to give to it. In making those decisions, you should consider all the evidence about the statement, including the circumstances under which the defendant may have made it.

---

**Authority**

Jury Instructions, *United States v Lischewski,* 3:18-cr-00203 (N.D. Cal. Oct. 29, 2019), Dkt. 454 at 34 (Jury Instruction No. 30 – Statements By Defendant); Ninth Circuit Model Jury Instruction (2010) No. 4.1.

**[Stipulated Instruction No. 9: Evidence of Good Character]**

[Defendant Thiry has offered evidence of his reputation for good character.]  [Defendant Thiry has offered evidence of someone's opinion as to his good character.]  You should consider such evidence along with all the other evidence in the case.

Evidence of good character may be sufficient to raise a reasonable doubt whether the defendant is guilty, because you may think it improbable that a person of good character would commit such a crime.  Evidence of a defendant's character, inconsistent with those traits of character ordinarily involved in the commission of the crime charged, may give rise to a reasonable doubt.

You should also consider any evidence offered to rebut the evidence offered by the defendant.

You should always bear in mind, however, that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.09 (2021 ed.) (updated Apr. 2, 2021) (modified).

**[Disputed Instruction No. 10: Impeachment by Prior Inconsistencies (Offered by the United States)]**

You have heard the testimony of [name of witness].  You have also heard that, before this trial, he made a statement that may be different from his testimony here in court.

That earlier statement was brought to your attention only to help you decide how believable his testimony in this trial was.  You cannot use it as proof of anything else.  You can only use it as one way of evaluating his testimony here in court.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.10 (2021 ed.) (updated Apr. 2, 2021) (modified).

**[Disputed Instruction No. 10: Impeachment Evidence – Witness (Offered by Defendants)]**

You have heard evidence that [name of witness], a witness, [specify basis for impeachment]. You may consider this evidence in deciding whether or not to believe this witness and how much weight to give to the testimony of this witness.

---

**Authority**

Jury Instructions, *United States v Lischewski,* 3:18-cr-00203 (N.D. Cal. Oct. 29, 2019), Dkt. 454 at 34 (Jury Instruction No. 31 – Impeachment Evidence - Witness); Ninth Circuit Model Jury Instruction (2010) No. 4.3.

**Disputed Instruction No. 11: Testimony of Certain Witnesses—Immunity (Offered by the United States)**

A person may testify under a grant of immunity (an agreement by the government, such as a non-prosecution agreement).  It is permissible for the government to make such a promise and the government's reasons for doing so are not relevant to you.  His or her testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt even though it is not corroborated or supported by other evidence.  You should consider testimony given under a grant of immunity with greater care and caution than the testimony of an ordinary witness.  You should consider whether testimony under a grant of immunity has been affected by the witness's own interest, the government's agreement, the witness's interest in the outcome of the case, or by prejudice against the defendants.  On the other hand, you should also consider that an immunized witness can be prosecuted for perjury for making a false statement.  After considering these things, you may give testimony given under a grant of immunity such weight as you feel it deserves.  You should not convict a defendant based on the unsupported testimony of an immunized witness, unless you believe the unsupported testimony beyond a reasonable doubt.

---

**Authorities**

Tenth Circuit Pattern Jury Instruction No. 1.14 (2021 ed.) (updated Apr. 2, 2021) (modified).  *Cf.* Final Jury Instructions, Instruction No. 6, *United States v. Gerhmann*, No. 1:15-cr-00303 (D. Colo. Nov. 2, 2018), ECF 161 ("Plea bargaining is lawful and proper, and the rules of this court expressly provide for it."); Final Jury Instructions, Instruction No. 3, *United States v. Coddington*, No. 1:15-cr-00383 (D. Colo. July 25, 2018), ECF 234 ("Plea bargaining is lawful

and proposer, and the rules of this court expressly provide for it."); *see also* Sixth Circuit Pattern Jury Instruction No. 7.07 (2021 ed.) (updated Oct. 1, 2021) (discussing immunity agreements, "It is permissible for the government to make such a promise.").

**Disputed Instruction No. 11: Immunity (Offered by Defendants)**

You heard testimony from [Individual X], who is subject to an immunity and cooperation agreement with the government.  The government has exclusive authority to grant immunity to a witness.  This agreement is not evidence of guilt of any of the defendants and you may consider it only in determining [Individual X]'s credibility.

You also saw evidence that [Company X] is subject to an immunity and cooperation agreement with the government, which grants immunity to the company and its employees, including [TK], in exchange for cooperation. The government has exclusive authority to grant immunity to a company and its employees.  This agreement is not evidence of guilt of any of the defendants and you may consider it only in determining the credibility of [Company X] witnesses, including [TK], who received immunity under it.

You should consider the testimony of these witnesses with greater care and caution than the testimony of an ordinary witness.  You should consider whether the testimony and credibility of these witnesses has been affected by the witness's own interest, the promise not to prosecute them personally, the government's agreement, the witness's interest in the outcome of the case, or by any prejudice he may have against some or all of the defendants.  On the other hand, you should also consider that these witnesses can be prosecuted for perjury for making a false statement.  After considering these things, you may give their testimony such weight as you feel it deserves.

---

**Authority**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt.

921 at 12.

**[Disputed Instruction No. 12: Expert and Opinion Testimony (Offered by the United States)]**

The United States opposes this instruction in its entirety on the basis that expert testimony should be excluded, for the reasons set forth in its pending Motion to Exclude Defendants' Expert, ECF No. 106, filed on 12/17/21.  If the Court permits expert testimony, the United States does not oppose the 10th Circuit Pattern instruction language.

**[Disputed Instruction No. 12: Expert and Opinion Testimony (Offered by Defendants)]**

During the trial you heard the testimony of Dr. Pierre-Yves Cremieux, who expressed opinions concerning [describe trial testimony].  In some cases, such as this one, scientific, technical, or other specialized knowledge may assist the jury in understanding the evidence or in determining a fact in issue. A witness who has knowledge, skill, experience, training or education, may testify and state an opinion concerning such matters.

You are not required to accept such an opinion. You should consider opinion testimony just as you consider other testimony in this trial. Give opinion testimony as much weight as you think it deserves, considering the education and experience of the witness, the soundness of the reasons given for the opinion, and other evidence in the trial.

---

**Authorities**

Tenth Circuit Criminal Pattern Jury Instruction 1.17(2021, ed).

**[Disputed Instruction No. 13: Summary/Overview Witnesses (Offered by the United States)]**

The United States opposes this instruction in its entirety for the reasons set forth in its accompanying memorandum.

**[Disputed Instruction No. 13: Summary/Overview Witnesses (Offered by Defendants)]**

[XXX] testified as a summary witness in this case. A summary witness is sometimes used in cases where there are a great number of documents in evidence, where testimony has been long and where there have been a multiplicity of matters that have been testified to. In such situations, it may be appropriate for a witness to attempt to summarize certain of the evidence.

I have previously instructed you, and I remind you now, that such witness testimony is not binding on you in any way.  [XXX] has summarized certain pieces or certain types of evidence but, of course, you are the triers of fact. It will be ultimately up to you to decide what evidence to believe or what parts of evidence to credit or discredit. You do not have to accept as true [XXX]'s testimony in its entirety or any part of it. You can totally disregard his testimony if you wish. That is your prerogative as the fact-finder. That testimony serves merely as a summary of evidence that you will then evaluate and determine what weight, if any, to give any of this evidence.

So I warn you that [XXX]'s testimony was nothing more than a summary of the evidence. It is not to be taken as truthful as to what that evidence is because, again, that is something that you must determine from the evidence that has been admitted in this case, both in the form of testimony of witnesses and in the form of the numerous documents that you have seen admitted in this case and that, ultimately, you will have to access during your deliberations in the jury room**.**

**Authorities**

Jury Instructions, *United States v. Wittig et al,* No. 5:03-CR-40142 (D. Kan. Sept. 15, 2005), Dkt. 528-1 at 17; *United States v. Ray*, 370 F.3d 1039, 1048 n. 8 (10th Cir. 2004), vacated on other grounds, 543 U.S. 1109 (2005) and opinion reinstated in part, 147 F. App'x 32 (10th Cir. 2005) (noting the fact that the "District Court explicitly instructed the jury on the proper use of the testimony and charts" as factor in concluding that the summary witness testimony did not prejudice the jury).

**[Stipulated Instruction No. 14: Charts and Summaries]**

During the trial, certain summaries prepared by [the government/the defense] were admitted in evidence because they may assist you in understanding the evidence that has been presented. The summaries themselves are not evidence of the material they summarize and are only as valid and reliable as the underlying material they seek to summarize.

You may give a summary exhibit entire weight, some weight, or no weight at all depending on your assessment of the underlying material and the accuracy of the summary.

---

**Authorities**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 31.

**Stipulated Instruction No. 15: References by Counsel**

If any reference by the Court or by counsel to matters of testimony or exhibits does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of the Court or of counsel.

---

**Authorities**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 13.

**[Stipulated Instruction No. 16: Similar Acts]**

You have heard evidence of other [crimes] [acts] [wrongs] engaged in by the defendants.

You may consider that evidence only as it bears on the defendants' [e.g., motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident] and for no other purpose.

Of course, the fact that the defendants may have previously committed an act similar to the one charged in this case does not mean that the defendants necessarily committed the act charged in this case.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.30 (2021 ed.) (updated Apr. 2, 2021) (modified).

**Disputed Instruction No. 17: Multiple Defendants—Multiple Counts (Offered by the United States)**

A separate crime is charged against both of the defendants in each count of the Superseding Indictment.  You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant on each count.  But as I will next instruct you, you can consider the actions and intent of Defendant Thiry, as an agent of Defendant DaVita, in determining whether DaVita is guilty or not guilty.

Your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to any other defendant or counts.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.22 (2021 ed.) (updated Apr. 2, 2021) (modified); *see, e.g.*, *United States v. Am. Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 204–05 (3d Cir. 1970) (approving instruction in a criminal antitrust conviction for price fixing, "When the act of the agent is within the scope of his employment or his apparent authority, the corporation is held legally responsible for it, although what he did may be contrary to his actual instructions and may be unlawful.").

**Disputed Instruction No. 17: Multiple Defendants – Multiple Counts (Offered by Defendants)**

A separate crime is charged against both of the defendants in each count of the Superseding Indictment.  The rights of each of the defendants in this case are separate and distinct.  You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant.

Your verdict as to one defendant or count, whether it is guilty or not guilty, should not affect your verdict as to any other defendant or counts.

---

**Authorities**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 14; Tenth Circuit Criminal Pattern Jury Instruction 1.22 (2021, ed).

**Stipulated Instruction No. 18: Corporate Defendant**

Defendant DaVita, Inc. is a corporation.

A corporation is a legal entity, and it may be found guilty of a criminal offense.  A corporation is entitled to the same fair trial and presumption of innocence as an individual, and it may be found guilty only if the evidence establishes its guilt beyond a reasonable doubt.  All persons, including corporations, stand equal before the law.

Under the law, a corporation is a person, but it can act only through its agents—such as its directors, officers, employees, or others acting on its behalf.  A corporation is legally bound by the acts and statements its agents do or make within the scope of their employment or within the scope of their authority.

An act or statement is within an agent's scope of employment or authority if it relates directly to his general duties for the corporation.  The corporation need not have directed or authorized the act or statement, either orally or in writing.

Additionally, in committing the offense, the agent must have intended, at least in part, to benefit the corporation. The fact that he may have acted for other reasons as well, such as for his own personal benefit or for the benefit of a different corporation, is of no consequence.  And the agent's acts or statements need not actually have resulted in any benefit to the corporation.

[The fact that a corporation has instructed its agents not to violate the Sherman Act or other laws does not excuse the corporation from responsibility for the unlawful acts or statements of its agents done within the scope of their employment or authority.]

---

### Authority

1A Kevin F. O'Malley, et al., *Fed. Jury Practice & Instructions: Criminal* § 18.05 (6th ed. 2006); 3d Cir. Model Crim. Jury Instr. 7.06 (2018); 7th Cir. Pattern Crim. Jury Instrs. 5.03, 5.04 (2020); 8th Cir. Model Crim. Jury Instr. 5.03 (2020); *United States v. Oceanic Illsabe Ltd.*, 889 F.3d 178, 196 (4th Cir. 2018); *United States v. Potter*, 463 F.3d 9, 25 (1st Cir. 2006) ("The case law has rejected arguments that the corporation can avoid liability by adopting abstract rules that no agent can make an unlawful price-fixing contract . . . ."); *United States v. Sun-Diamond Growers of Cal.*, 138 F.3d 961, 970–71 (D.C. Cir. 1998); *United States v. Basic Constr. Co.*, 711 F.2d 570, 572–573 (4th Cir. 1983) ("These cases hold that a corporation may be held criminally responsible for antitrust violations committed by its employees if they were acting within the scope of their authority, or apparent authority, and for the benefit of the corporation, even if, as in *Hilton Hotels* and *American Radiator*, such acts were against corporate policy or express instructions."); *United States v. Beusch*, 596 F.2d 871, 877 (9th Cir. 1979) (approving instruction, "A corporation may be responsible for the acts of its agents done or made within the scope of [their] authority, even though the agent's conduct may be contrary to the corporation's actual instruction or contrary to the corporation's stated policies."); *United States v. Cadillac Overall Supply Co.,* 568 F.2d 1078, 1090 (5th Cir. 1978); *United States v. Am. Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 204–05 (3d Cir. 1970) (criminal antitrust conviction for price fixing) (approving instruction, "When the act of the agent is within the scope of his employment or his apparent authority, the corporation is held legally responsible for it, although what he did may be contrary to his actual instructions and may be unlawful.").

**Stipulated Instruction No. 19: Consider Only Crimes Charged**

You are here to decide whether the government has proved beyond a reasonable doubt that each defendant is guilty of the crimes charged.  The defendants are not on trial for any act, conduct, or crime not charged in the Superseding Indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crimes charged.  The fact that another person or company *also* may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether each defendant has been proved guilty of the crime charged.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.19 (2021 ed.) (updated Apr. 2, 2021) (modified).

**Stipulated Instruction No. 20: Markings on Documents**

Many of the documents admitted in the trial are marked as "confidential," "highly confidential," or with something similar, generally on the bottom of the page. These markings were added as part of the litigation after the creation of the documents, have no significance to the contents of the documents, and should be disregarded.

---

**Authority**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 30.

**Stipulated Instruction No. 21: Equality of Parties**

The fact that this prosecution is brought in the name of the United States of America entitles the government to no greater consideration than that granted to defendants or any other party to a legal case. All parties, whether the government or individuals, stand as equals at the bar of justice.

---

**Authority**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 34.

**Disputed Instruction No. 22: Section 1 of the Sherman Act and the Charge (Offered by the United States)**

The Superseding Indictment charges each defendant with violating Section 1 of the Sherman Act.  Section 1 of the Sherman Act outlaws every "conspiracy, in restraint of trade or commerce among the several States or with Foreign nations," which includes a conspiracy to allocate employees.  Counts One, Two, and Three charge separate conspiracies:

For Count One, the Superseding Indictment charges that beginning at least as early as February 2012 and continuing until at least as late as July 2017, the defendants entered into and engaged in a conspiracy with Surgical Care Affiliates and others to allocate senior-level employees by agreeing not to solicit each other's senior-level employees, in violation of Section 1 of the Sherman Act.

For Count Two, the Superseding Indictment charges that beginning at least as early as April 2017 and continuing until at least as late as June 2019, the defendants entered into and engaged in a conspiracy with [Company B] and others to allocate employees by agreeing that [Company B] would not solicit DaVita's employees, in violation of Section 1 of the Sherman Act.

For Count Three, the Superseding Indictment charges that beginning at least as early as November 2013 and continuing until at least as late as June 2019, the defendants entered into and engaged in a conspiracy with [Company C] and others to allocate employees by agreeing that [Company C] would not solicit DaVita's employees, in violation of Section 1 of the Sherman Act.

**Authority**

15 U.S.C. § 1; Superseding Indictment, *United States v. DaVita, Inc.*, No. 1:21-cr-00229-RBJ

(D. Colo. Nov. 11, 2021), ECF No. 74; Order Denying Defendants' Mot. to Dismiss, No. 1:21-

cr-00229-RBJ (D. Colo. Jan. 28, 2022), ECF No. 132.

**Disputed Instruction No. 22: Section 1 of the Sherman Act and the Charge (Offered by Defendants)**

Defendants oppose this instruction in its entirety for the reasons set forth in their accompanying memorandum.

**Disputed Instruction No. 23: Elements of a Section 1 Offense (Offered by the United States)**

In order to establish the offense of conspiracy to allocate employees charged in the Superseding Indictment, the government must prove each of these elements beyond a reasonable doubt:

1.  A conspiracy between two or more competitors for employees to allocate employees as alleged in the Superseding Indictment existed on or about the time period alleged in the Superseding Indictment.

2.  The defendant knowingly—that is, voluntarily and intentionally—joined the conspiracy; and

3.  The conspiracy involved interstate trade or commerce.

If you find from your consideration of all the evidence that the government has proven each of these elements beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, if you find from your consideration of all the evidence that the government has failed to prove any of these elements beyond a reasonable doubt, then you should find the defendant not guilty.

---

**Authorities**

15 U.S.C. § 1; Elements of the Offense, ABA Model Jury Instructions in Criminal Antitrust Cases (2009 ed.), Chapter 3 – the Sherman Act Section 1 Offense – ABA Section of Antitrust Law; *United States v. Metro. Enters., Inc.*, 728 F.2d 444 (10th Cir. 1984); *United States v. Kemp & Assocs.*, 907 F.3d 1264, 1273 (10th Cir. 2018); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469 (10th Cir. 1990).

**Disputed Instruction No. 23: Elements of the Offense (Offered by Defendants)**

Each defendant is charged in the indictment with three violations of 15 U.S.C. § 1 of the Sherman Act. This law makes it a crime in certain circumstances to unreasonably restrain trade. The indictment charges the defendants with: (1) a conspiracy with Surgical Care Affiliates to allocate the market for senior executives across the United States beginning at least as early as February 2012 and continuing at least as late as July 2017; (2) a conspiracy with [Company B] to allocate the market for employees across the United States beginning at least as early as April 2017 and continuing at least as late as June 2019; and (3) a conspiracy with [Company C] to allocate the market for employees across the United States beginning at least as early as November 2013 and continuing until at least as late as June 2019.

To find a defendant guilty of this crime, you must be convinced that the government has proved, for each count, each of the following elements beyond a reasonable doubt:

*First*: that defendants entered into an agreement with a competitor to allocate the market for senior executives across the United States (Count 1) and other employees across the United States (Counts 2 and 3) at or about the times alleged;

*Second*: that defendants entered into each charged agreement with the intent and purpose of allocating the market for senior executives across the United States (Count 1) or other employees across the United States (Counts 2 and 3); and

*Third*: that the conspiracy affected interstate commerce.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you must find the defendants guilty.  If, on the

other hand, you find from your consideration of all of the evidence that any of these elements has not been proved beyond a reasonable doubt, then you must find the defendants not guilty.

---

**Authority**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 16 (Instruction No. 14) (modified); Order on Defendants' Motion to Dismiss, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Jan. 28, 2022), Dkt. 132 at 18-19 ("[A]t trial, the government will not merely need to show that the defendants entered the non-solicitation agreement and what the terms of the agreement were. It will have to prove beyond a reasonable doubt that defendants entered into an agreement with the purpose of allocating the market for senior executives (Count 1) and other employees (Counts 2 and 3). … Similarly, [] the government will have to prove more than that defendants had entered into a non-solicitation agreement—it will have to prove that the defendants intended to allocate the market as charged in the indictment."); *id.* at 5 ("the [Supreme] Court has 'reiterated time and time again' that naked horizontal market allocation agreements have no purpose but to stifle competition") (quoting *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 08 (1972)).

**Disputed Instruction No. 24: On or About—Period of the Conspiracy (Offered by the United States)**

The Superseding Indictment charges a conspiracy in Count One beginning at least as early as February 2012 and continuing at least as late as July 2017; a conspiracy in Count Two beginning at least as early as April 2017 and continuing at least as late as June 2019; and a conspiracy in Count Three beginning at least as early as November 2013 and continuing at least as late as June 2019.  For each count, the government does not need to prove that the conspiracy began or ended on those exact dates or that the conspiracy continued for the entire period charged in that count.  It is sufficient if the government proves beyond a reasonable doubt that the conspiracy existed reasonably near the time period alleged in that count.

---

**Authorities**

Tenth Circuit Pattern Jury Instruction No. 1.18 (2021 ed.) (updated Apr. 2, 2021) (modified); *United States v. Poole*, 929 F.2d 1476, 1482–83, 1182 n.5 (10th Cir. 1991) (upholding jury instruction that "it is not necessary that the proof establish with certainty the exact date of the alleged offenses" because that instruction "has been approved by this Circuit on numerous occasions"); *In re Urethane Antitrust Litig.*, 2013 WL 2097346, at *9 (D. Kan. May 15, 2013), *amended*, 2013 WL 3879264 (D. Kan. July 26, 2013), *aff'd*, 768 F.3d 1245 (10th Cir. 2014) (in an antitrust case, "the jury was not required to find that a conspiracy existed for the entire period alleged by plaintiffs").

**Disputed Instruction No. 24: On or About (Offered by Defendants)**

The indictment charges that Count One of the conspiracy was committed beginning at least as early as February 2012 and continuing at least as late as July 2017; Count Two of the conspiracy was committed beginning at least as early as April 2017 and continuing at least as late as June 2019; and Count Three of the conspiracy was committed beginning at least as early as November 2013 and continuing at least as late as June 2019. The government must prove beyond a reasonable doubt that a defendant committed the crime reasonably near those dates.

---

**Authorities**

Tenth Circuit Criminal Pattern Jury Instruction 1.18 (2021, ed); Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 17.

**Stipulated Instruction No. 25: Conspiracy**

The type of relationship outlawed by the Sherman Act is a conspiracy. Conspiracy is often described as a partnership in crime, in which each person found to be a member of the conspiracy is liable for all reasonably foreseeable acts and statements of the other members made during the existence of and in furtherance of the conspiracy.

To prove that a conspiracy existed, the evidence must show that the alleged members of the conspiracy in some way came to an agreement or mutual understanding to accomplish some unlawful purpose. Direct proof of a conspiracy may not be available. A conspiracy may, however, be disclosed by the circumstances or by the acts of the members, such as their course of dealings or other circumstances. Therefore, you may infer the existence of a conspiracy from what you find the members actually did or said.

To establish the existence of a conspiracy, the evidence need not show that the members of the conspiracy entered into any express, formal, or written agreement; that they met together; or that they directly stated what their object or purpose was, or the details of it, or the means by which the object was to be accomplished.

Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together and discussed common aims and interests, does not necessarily establish the existence of a conspiracy. If actions were taken independently by them, without any agreement or mutual understanding among them, then there would be no conspiracy.

A conspiracy may vary in its membership from time to time. It may be formed without all the parties coming to an agreement at the same time, knowing all the details of the agreement,

or knowing who all the other members are.  It is not essential that all members acted exactly alike, or agreed to play any particular part in carrying out the agreement.  The unlawful agreement may be proven if the evidence establishes that the parties each aimed to accomplish a common purpose.

In determining whether a conspiracy has been proved, you must view the evidence as a whole, and not piecemeal.  You should consider the actions and statements of all the alleged conspirators.  The conspiracy may be inferred from all the circumstances and the actions and statements of the alleged participants.

Acts that are, by themselves, totally innocent acts, may be among the acts that make up a conspiracy.

---

**Authorities**

Conspiracy Explained, ABA Model Jury Instructions in Criminal Antitrust Cases (2009 ed.), Chapter 3 – the Sherman Act Section 1 Offense – ABA Section of Antitrust Law.

**Disputed Instruction No. 26: Evidence of Similarity (Offered by the United States)**

The United States opposes this instruction in its entirety as redundant to language contained within the agreed upon instruction for conspiracy.

**Disputed Instruction No. 26: Evidence of Similarity (Offered by Defendants)**

Evidence of the recruiting and hiring practices of the defendants and alleged coconspirators has been admitted to assist you in deciding whether the defendant entered into an agreement to allocate the market for employees across the United States.  Such evidence may lead to you to conclude that some or all of the defendants never entered into the agreement charged in the indictment or that some or all of the defendants did enter into the agreement.

The mere fact that some or all of the defendants may have decided not to solicit or hire each others' employees does not by itself establish the existence of a conspiracy among them.  Evidence of similarity of business practices of defendants does not alone establish an agreement to allocate the market for employees, since such activities may be consistent with ordinary and competitive behavior in a free and open market.  A business may lawfully decide not to hire or solicit another's employees as long as it does so independently and not as part of an illegal agreement or understanding with one or more of its competitors.

---

**Authorities**

Final Jury Instructions *United States v. Penn et al.,* No. 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 22-23 (Instruction No. 18 (excerpt, modified)); *see also* Jury Instructions; Jury Instructions, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 3:07-md-01827-SI (N.D. Cal.), Dkt. 6036 at 11 (Horizontal Price Fixing – Evidence of Similarity); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 554 (2007); *Theatre Enters. Inc. v. Paramount Film Distrib. Corp.,* 346 U.S. 540-41 (1954).

**Disputed Instruction No. 27: Conspiracy to Allocate Employees (Offered by the United States)**

The first element is the existence of a conspiracy to allocate employees as charged in the Superseding Indictment.  An employee-allocation conspiracy is an agreement or mutual understanding among competitors for employees not to compete with one another for the services of an employee or set of employees.  If you find the government has proven such an agreement or mutual understanding beyond a reasonable doubt, then the government has satisfied its burden for this element.

An employee-allocation conspiracy can take various forms.  Such a conspiracy exists, for example, where two or more competitors agree to not solicit each other's existing or prospective employees for purposes of allocating employees.

If you should find that a defendant entered into a conspiracy to allocate employees, the fact that a defendant or their co-conspirator did not take any steps to effectuate the conspiracy, that one or more of them did not abide by the conspiracy, that one or more of them may not have lived up to some aspect of the conspiracy, or that they may not have been successful in achieving their objectives, is no defense.  The agreement or mutual understanding itself is the crime, even if it is never carried out.

If the conspiracy charged in the Superseding Indictment is proved, it is no defense that the conspirators actually competed with each other in some manner or that they did not conspire to eliminate all competition.  Nor is it a defense that the conspirators did not attempt to conspire with all of their competitors.  Similarly, the conspiracy is unlawful even if it did not extend to all types of employees of the conspirators or did not affect all of their employees.

You need not be concerned with whether the conspiracy was reasonable or unreasonable, the justifications for the conspiracy, or the harm, if any, done by it.  It is not a defense and not relevant that the parties may have acted with good motives, had a business justification, or have thought that what they were doing was legal, or that the conspiracy may have had some good results.  If there was, in fact, a conspiracy as charged, it was illegal.

---

## Authorities

Horizontal Allocations, ABA Model Jury Instructions in Criminal Antitrust Cases (2009 ed.), Chapter 3 – the Sherman Act Section 1 Offense – ABA Section of Antitrust Law; *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972) (noting that "[t]he Court has consistently rejected the notion that naked restraints of trade are to be tolerated because they are well intended"); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 221–22 (1940) (the Sherman Act does not allow as justifications "the good intentions of the members of the combination"); *United States v. Kemp & Assocs.*, 907 F.3d 1264, 1273 (10th Cir. 2018) ("It is undisputed that an agreement to allocate or divide customers between competitors in the same horizontal market, constitutes a per se violation of § 1 of the Sherman Act") (citing *Topco Assocs.*, 405 U.S. at 610– 12 (quotation marks omitted)); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 473 (10th Cir. 1990) ("[W]e concur with the determination of the trial court and hold that the activity alleged in the indictment in this case, an agreement to allocate or divide customers between competitors within the same horizontal market, constitutes a per se violation of § 1 of the Sherman Act."); *United States v. McKesson & Robbins, Inc.*, 351 U.S. 305, 309–10 (1956) ("It makes no difference whether the motives of the participants are good or evil; whether the price

fixing is accomplished by express contract or by more subtle means . . . whether the effect of the agreement is to raise or to decrease prices."); *United States v. Reicher*, 983 F.2d 168, 170–72 (10th Cir. 1992).

**Disputed Instruction No. 27: Market Allocation (Offered by Defendants)**

The government has alleged that defendants allocated markets for senior executives across the United States (Count 1) and other employees across the United States (Counts 2 and 3) by entering into non-solicitation agreements.  Not every non-solicitation agreement, however, would allocate a market as charged in the indictment.

As a result, for each count, the government must first prove beyond a reasonable doubt that the defendants entered the non-solicitation agreement alleged in the indictment and what the terms of the agreement were.  A non-solicitation agreement is an agreement not to proactively or affirmatively ask for or request something.

The government must also prove beyond a reasonable doubt that the defendants entered into any non-solicitation agreement proved to exist with the purpose of allocating the market for senior executives across the United States (Count 1) or other employees across the United States (Counts 2 and 3).

Finally, the government must prove beyond a reasonable doubt that the defendants intended to allocate the market as charged in the indictment.

To allocate means to divide.  Thus, a conspiracy to allocate a market for employees exists where two or more competitors agree to divide or apportion the market for employees and cease competition for the employees allocated.  A non-solicitation agreement does not constitute market allocation where the agreement permits employees to transfer between the companies who entered into the agreement, or where these companies' employees do not comprise the entire market of employees of their services.  The fact that a non-solicitation agreement may

constrain the companies in recruiting each other's employees to some degree does not allocate the market for employees.

---

**Authorities**

Order on Defendants' Motion to Dismiss, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Jan. 28, 2022), Dkt. 132 at 17 ("Here, the government has sufficiently alleged that defendants allocated the market with their non-solicitation agreement. It does not follow that every non-solicitation agreement or even every no-hire agreement would allocate the market and be subject to per se treatment. And as discussed in a prior section, my conclusion is also more limited than the defendants' argument on this point—I do not agree with defendants' contention that non-solicitation agreements are never properly subject to per se treatment as horizontal market allocation agreements. What I conclude is that if naked non-solicitation agreements or no-hire agreements allocate the market, they are per se unreasonable."); *id.* at 18-19 ("at trial, the government will not merely need to show that the defendants entered the non-solicitation agreement and what the terms of the agreement were. It will have to prove beyond a reasonable doubt that defendants entered into an agreement with the purpose of allocating the market for senior executives (Count 1) and other employees (Counts 2 and 3)."); *id.* at 19 ("the government will have to prove more than that defendants had entered into a non-solicitation agreement—it will have to prove that the defendants intended to allocate the market as charged in the indictment"); *Midwest Underground Storage, Inc. v. Porter,* 717 F.2d 493, 497 n.2 (10th Cir. 1983) ("[T]he essence of a market allocation violation … is that competitors apportion the market among themselves and cease competing in another's territory or for another's

customers."); Jury Instructions, Dkt. 1232, *In re: Wholesale Grocery Products Antitrust Litigation* (0:09-md-02090-ADM-TNL) (D. Minn) (Apr. 20, 2018) ("Allocate means to divide."); *In re: Wholesale Grocery Products Antitrust Litigation*, 957 F.3d 879 (8th Cir. 2020) (affirming "[a]llocate means to divide" instruction); *Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 793 (Colo. App. 2001), *abrogated on other grounds by Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116 (Colo. 2007) ("'Solicit' means to approach with a request or plea. . . . Th[i]s[] definition[] impl[ies] actively initiated contact."); *Slicex, Inc. v. Aeroflex Colorado Springs*, Inc., No. 2:04-CV-615-TS, 2006 WL 2088282, at *3 (D. Utah July 25, 2006) ("the Court finds that in order for Defendant to 'solicit or take away' Plaintiff's employees, Defendant must have taken some proactive or affirmative step toward doing so"); *Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999) ("The Agreement is clearly not a territorial or customer allocation because the record reveals no geographic or market division. The Bogans suggest that the Agreement may be a supplier allocation, but the facts do not bear this interpretation; the Agreement permits transfers, and experienced NML agents do not comprise the entire set of suppliers of their services. Thus, while the Agreement may constrain General Agents to some degree, it does not allocate the market for agents to any meaningful extent.").

**Disputed Instruction No. 28: Alleged Notice and Confirmation Requirements (Offered by the United States)**

The United States opposes this instruction in its entirety for the reasons set forth in its accompanying memorandum.

**Disputed Instruction No. 28: Alleged Notice and Confirmation Requirements (Offered by Defendants)**

For Count 1, the government alleges that the defendants monitored compliance with the agreement not to solicit senior executives by requiring senior executives of DaVita and SCA who applied to the other company to notify their current employer that they were seeking other employment in order for their applications to be considered.

For Count 2, the government alleges that the defendants monitored compliance with the agreement that [Company B] would not solicit employees from DaVita by requiring employees of DaVita who reached out to [Company B] to notify DaVita that they were seeking other employment in order to be considered by [Company B].

For Count 3, the government alleges that the defendants monitored compliance with the agreement that [Company C] would not solicit employees from DaVita by requiring employees of DaVita who reached out to [Company C] to either confirm that they were actively pursuing other job opportunities or to notify DaVita that they were seeking other employment in order to be considered by [Company C].

The government has not charged that those alleged notice and confirmation requirements were market allocation agreements, nor has the government charged that such notice and confirmation requirements are illegal under the Sherman Act. You are instructed to consider evidence of any such notice and confirmation requirements solely as evidence of whether there were non-solicitation agreements and are not to consider whether such notice and confirmation requirements, if proved, were illegal.

**Authorities**

Superseding Indictment, *United States v. DaVita, Inc.*, No. 1:21-cr-00229-RBJ (D. Colo. Nov.

11, 2021), ECF No. 74 ¶¶ 10, 11(d)-(e), 18, 19(d)-(e), 26, 27(e)-(f).

**Disputed Instruction No. 29: Knowingly Joined (Offered by the United States)**

As previously noted, the second element the government must prove beyond a reasonable doubt for you to find each defendant guilty is that each defendant knowingly joined the employee-allocation conspiracy charged in the Superseding Indictment.

To act "knowingly" means to act voluntarily and intentionally, and not because of a mistake or accident. Therefore, before you may convict the defendant, the evidence must establish that the defendant voluntarily became a member of the conspiracy to allocate employees with the intent to aid or further some purpose of the conspiracy.

As I have already instructed you, an employee-allocation conspiracy is in itself an unreasonable restraint of trade and illegal; the government does not have to prove that the defendants specifically intended to restrain trade or produce anticompetitive effects. The intent to restrain trade is satisfied with the finding of intent to allocate employees. Therefore, you must disregard whether defendants knew allocating employees was prohibited, as well as whether there were possible good motives. You must disregard any questions on the reasonableness, or economic impact, of the defendants' actions.

A person may become a member of a conspiracy without full knowledge of all the details of the conspiracy, the identity of all its members, the part each member played in the charged conspiracy, or the means by which the objects were to be accomplished. Knowledge of the essential nature of the conspiracy is enough.

On the other hand, a person who has no knowledge of a conspiracy, but who happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a

member of the conspiracy.  Similarly, knowledge of a conspiracy, without participation in it, is also insufficient to make a person a member of the conspiracy.

But a person who knowingly joins an existing conspiracy or participates in part of the conspiracy, with knowledge of the overall conspiracy, is just as responsible as if he had been one of the originators of the conspiracy or had participated in every part of it.  Likewise, a person who knowingly directs another to implement the details of the conspiracy is just as responsible as if he participated in every part of it, including its origin.

Your determination whether a defendant knowingly joined the conspiracy must be based solely on the actions of the defendant, as established by the evidence.  You should not consider what others may have said or done to join the conspiracy.  Membership of a defendant in this conspiracy must be established by evidence of his own conduct; by what he said or did.  Or, as I have previously instructed, in the case of Defendant DaVita Inc., by what its agents said or did within the scope of their employment or authority as described in Instruction 15.

If you find that a defendant joined the conspiracy, then the defendant remains a member of the conspiracy, and is responsible for all reasonably foreseeable actions taken in furtherance of the conspiracy, until the conspiracy has been completed or abandoned, or until the defendant has withdrawn from the conspiracy.

---

**Authorities**

"Knowingly" Joining the Conspiracy, ABA Model Jury Instructions in Criminal Antitrust Cases (2009 ed.), Chapter 3 – the Sherman Act Section 1 Offense – ABA Section of Antitrust Law; *Bank of Utah v. Com. Sec. Bank*, 369 F.2d 19, 26 (10th Cir. 1966) ("[I]ntent to restrain trade is

not essential to violation of Section 1 of the Act"); *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 221–22 (1940) (the Sherman Act does not allow as justifications "the good intentions of the members of the combination"); *United States v. Metro. Enters., Inc.*, 728 F.2d 444, 450–51 (10th Cir. 1984) (holding that intent is satisfied "by showing that the appellants knowingly joined and participated in a conspiracy to rig bids," and also holding that "[a] co-conspirator need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy"); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 474–75 (10th Cir. 1990) (upholding instruction in Sherman Act case that, "[t]o be a member of the conspiracy a defendant need not know all of the other members, nor all of the details of the conspiracy, nor the means by which the objects were to be accomplished" as "properly set[ting] forth the law of this circuit"); *United Cheek v. United States*, 498 U.S. 192, 199 (1991) (stating "general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution"); *Law v. NCAA*, 185 F.R.D. 324, 336 n.19 (D. Kan. 1999) (instruction in antitrust case explained a "claim of good motives, like a claim of ignorance of the law, cannot justify or excuse a violation of the federal antitrust laws and so would be no defense in this case"); *United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006) (To "prove knowledge of the essential objectives of a conspiracy, the government does not have to show the defendant knew all the details or all the members of a conspiracy.  Rather, the government only needs to demonstrate the defendant shared a common purpose or design with his alleged coconspirators.") (internal quotation omitted); *United States v. Hamilton*, 587 F.3d 1199, 1207 (10th Cir. 2009) (defendant can be held accountable for all acts and statements of co-conspirators "that occurred prior to his entry into the conspiracy, if those

acts or statements were in furtherance of the conspiracy"); *United States v. Beachner Constr. Co.*, 729 F.2d 1278, 1283 (10th Cir. 1984) ("[A] common objective was shared by each participating contractor: to eliminate price competition and ensure higher individual profits."); *United States v. Mobile Materials, Inc.*, 881 F.2d 866, 871 (10th Cir. 1989) ("The purpose was to circumvent price competition and enhance profitability."); *United States v. Ohayon*, 483 F.3d 1281, 1291 (11th Cir. 2007) ("To establish that a defendant knowingly joined a conspiracy to possess with intent to distribute drugs, the government must prove beyond a reasonable doubt that the defendant knew the essential *nature* of the conspiracy." (emphasis added)).  *Cf.* Tenth Circuit Pattern Jury Instruction No. 1.37 (2021 ed.) (updated Apr. 2, 2021).

**Disputed Instruction No. 29: "Knowingly" Joining the Conspiracy (Offered by Defendants)**

The government must prove beyond a reasonable doubt that defendants knowingly joined each of the conspiracies charged in the indictment. To act "knowingly" means to act voluntarily and intentionally, and not because of ignorance, mistake, or accident.  Therefore, before you may convict a defendant, the evidence must establish that the defendant knowingly joined each of the conspiracies with the intent to advance the objective of the conspiracies—here, allocating the market for senior executives (Count 1) or other employees (Counts 2 and 3).

Mere knowledge of a conspiracy is insufficient to make a person a member of the conspiracy.  But a person who knowingly joins an existing conspiracy, with knowledge of the overall conspiracy and with the intent to advance its objectives, is just as responsible for actions and statements of other members of the same conspiracy that were made while the person was a member of the conspiracy, as long as the actions and statements were made during the course and in furtherance of the conspiracy and fell within the scope of the unlawful agreement and could reasonably have been foreseen to be a necessary or natural consequence of the unlawful agreement.

If you find that a defendant knowingly joined the conspiracy, then the defendant remains a member of the conspiracy and is responsible for all actions taken in furtherance of the conspiracy until the conspiracy has been completed or abandoned or until the defendant has withdrawn from the conspiracy.

**Authorities**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt.

921 at 25.

**[Disputed Instruction No. 30: Statements Indicating Consciousness of Guilt (Offered by the United States)]**

You may consider statements knowingly and voluntarily made by a defendant to prevent detection of criminal activity.

When a defendant voluntarily offers an explanation or voluntarily makes some statement tending to show his innocence, and it is later shown that the defendant knew that this statement or explanation was false, you may consider this as showing a consciousness of guilt on the part of a defendant, since it is reasonable to infer that an innocent person does not usually find it necessary to invent or fabricate an explanation or statement tending to establish his innocence.

Whether evidence as to a defendant's explanation or statement points to a consciousness of guilt on his part, and the significance, if any, to be attached to any such evidence, are matters exclusively within the province of the jury since you are the sole judges of the facts of this case.

In your evaluation of evidence of an exculpatory statement shown to be false, you may consider that there may be reasons—fully consistent with innocence—that could cause a person to give a false statement showing that he did not commit a crime. Fear of law enforcement, reluctance to become involved, and simple mistake may cause a person who has committed no crime to give such a statement or explanation.

---

**Authorities**

1A Kevin F. O'Malley, et al., *Fed. Jury Practice & Instructions: Criminal* § 14:06 (6th ed. 2021); Jury Instr. No. 34, *United States v. B&H Maint. and Constr., Inc.*, No. 07-cr-00090-WYD (D. Colo. June 19, 2008), ECF 319-10; *United States v. Ingram*, 600 F.2d 260, 262 (10th Cir.

1979) ("We have held that false exculpatory statements are admissible to prove consciousness of guilt and unlawful intent."); *United States v. Smith*, 833 F.2d 213, 218 (10th Cir. 1987) (rejecting defendant's argument that there was insufficient evidence linking him to the conspiracy in part because "[a] false exculpatory statement will support an inference of consciousness of guilt"). *Cf. United States v. Mullins*, 4 F.3d 898, 900 n.2 (10th Cir. 1993) (rejecting defendant's challenge to a jury instruction because the instruction properly "sa[id] that an inference of consciousness of guilt may be drawn if a witness has denied incriminating facts.").

**[Disputed Instruction No. 30: Statements Indicating Consciousness of Guilt (Offered by Defendants)]**

Defendants oppose this instruction in its entirety as irrelevant for the reasons set forth in their accompanying memorandum.

**Disputed Instruction No. 31: Interstate Commerce (Offered by the United States)**

The third element is that the crime involved interstate commerce.  In order to satisfy this element, the government must prove beyond a reasonable doubt that the conspiracy charged in the indictment either occurred in the flow of interstate commerce or had a substantial effect on interstate commerce.

The term "interstate commerce" includes transactions in which products, services, people, property, salaries, or funds cross state lines or that are in the continuous flow of commerce from the commencement of their journey until their final destination in a different state.  If the conduct charged in the indictment involves transactions that are in the flow of interstate commerce, the interstate-commerce element is satisfied and the size of any such transaction is of no significance.

Regardless of whether the conduct was in the flow of interstate commerce, the interstate commerce element is also satisfied if the conduct charged in the indictment had a substantial effect on interstate commerce, or had the potential to do so.  A conspiracy may have such an effect even though some or all of the conspirators do not themselves engage in interstate commerce and have confined their activities to a single state. The government's proof need not quantify or value any impact of such an effect.

It is a question of fact for the jury to determine whether the conspiracy involved such interstate commerce.  Proof of interstate commerce as to any defendant or co-conspirator in the conspiracy charged in the indictment satisfies the interstate-commerce element as to every defendant.

**Authorities**

*McLain v. Real Estate Bd. Of New Orleans*, 444 U.S. 232, 241-45 (1980); *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 329 n.10 (1991); *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 194-95 (1974); *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 744 (1976); *United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 477 (10th Cir. 1990); *see also United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 & n.59 (1940); *United States v. Cargo Serv. Stations, Inc.,* 657 F.2d 676, 680 (5th Cir. 1981); *Park v. El Paso Bd. of Realtors*, 764 F.2d 1053, 1063 (5th Cir. 1995).

---

**Disputed Instruction No. 31: Interstate Commerce (Offered by Defendants)**

The third element is that the crime affected interstate commerce.  In order to satisfy this element, the government must prove beyond a reasonable doubt that the conspiracies charged in the indictment either occurred in the flow of interstate commerce or had a substantial effect on interstate commerce.

The term "interstate commerce" includes transactions of goods or services that are moving across state lines or that are in the continuous flow of commerce from the commencement of their journey until their final destination in a different state.  When such transactions are involved, the amount of commerce restrained by the conspiracy is of no significance.

The term "interstate commerce" may also include entirely intrastate transactions in which some or all the defendants are not engaged in interstate commerce and some or all of the acts are wholly within a state, if the activities substantially and directly affect interstate commerce.

It is a question of fact for the jury to determine whether the conspiracies involve such interstate commerce.

---

**Authorities**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 26.

**Disputed Instruction No. 32: Statute of Limitations (Offered by the United States)**

The United States opposes this instruction in its entirety for the reasons set forth in its accompanying memorandum.

**Disputed Instruction No. 32: Statute of Limitations (Offered by Defendants)**

There is a five-year statute of limitations that applies to the crime charged in the indictment.  That means you cannot find Mr. Thiry or DaVita, Inc. guilty unless the government proves, beyond a reasonable doubt, that the alleged conspiracies existed at some point within the statute of limitations, which for the purposes of Counts One and Two means that those conspiracies existed after August 9, 2016, and for the purposes of Count Three means that conspiracy existed after November 29, 2016.

To prove that the conspiracies existed within the statute of limitations, the government must prove beyond a reasonable doubt that one or more of members of the conspiracy performed some act in furtherance of the conspiracy after August 9, 2016 as to Counts One and Two and after November 29, 2016 as to Count Three.

---

**Authorities**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 29.

**Disputed Instruction No. 33: Defense Theory of the Case (Offered by the United States)**

The United States opposes this instruction in its entirety for the reasons set forth in its accompanying memorandum.

**Disputed Instruction No. 33: Defense Theory of the Case (Offered by Defendants)**

Defendants' theory of the case is that the government has not proved beyond a reasonable doubt that either party engaged in any conspiracy with the purpose to allocate employee markets in the United States, by any means.  Specifically, defendants contend that the evidence shows that they did not enter into any agreement with the purpose of allocating markets for senior executives across the United States (Count 1) or other employees across the United States (Counts 2 and 3), and they did not intend to allocate such markets.  Rather, defendants contend that the evidence shows that they did not act with any unlawful purpose with respect to each of the alleged non-solicitation agreements and that they and their alleged co-conspirators, along with many other employers all over the country, competed for each other's employees throughout the alleged conspiracy periods, that they acted lawfully and competitively, and that they pursued independent business strategies based on their own interests and considerations. Defendants also contend that they did not knowingly and intentionally join a conspiracy to allocate employee markets, share that goal, or do anything with the intention of accomplishing it.

---

**Authorities**

Final Jury Instructions *United States v. Penn et al.,* 1:20-cr-00152 (D. Colo. Dec. 16, 2021), Dkt. 921 at 35-44; Final Jury Instructions, *United States v. Lischewski*, 3:18-cr-00203 (N.D. Cal. Dec. 2, 2019), Dkt. 626 at 25 (Instruction No. 22 Theory of Defense); Jury Charge, *United States v. Usher et. al*, 1:17-cr-00019 (S.D.N.Y Nov. 8, 2018), Dkt. 239 (Tr. at 2459:24-2460:6).

**[Stipulated Instruction No. 34: Good Faith]**

It is not necessary for the government to prove that the defendant knew that the conspiracy was a violation of the law.  Thus, if you find beyond a reasonable doubt that the that the government proved beyond a reasonable doubt every element of the offense, then the fact that a defendant believed in good faith that what was being done was lawful is not a defense.

---

**Authorities**

*United States v. Topco Assocs., Inc.*, 405 U.S. 596, 610 (1972) (The Supreme "Court has consistently rejected the notion that naked restraints of trade are to be tolerated because they are well intended."); *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 221–22 (1940) (the Sherman Act does not allow as justifications "the good intentions of the members of the combination"); *id.* at 224 n.59 (Section 1 violations do not require "[a]n intent and a power to produce" an anticompetitive result); *Bank of Utah v. Com. Sec. Bank*, 369 F.2d 19, 26 (10th Cir. 1966) ("intent to restrain trade is not essential to violation of Section 1 of the Act"); *United States v. Metro. Enters., Inc.*, 728 F.2d 444, 450 (10th Cir. 1984) (intent is satisfied "by showing that the appellants knowingly joined and participated in a conspiracy to rig bids").

**Stipulated Instruction No. 35: Punishment**

If you find the defendant guilty, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

---

**Authorities**

Tenth Circuit Pattern Jury Instruction No. 1.20 (2021 ed.) (updated Apr. 2, 2021); *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'" (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)).

**Stipulated Instruction No. 36: Duty to Deliberate—Verdict Form**

In a moment the bailiff will escort you to the jury room and provide each of you with a copy of the instructions that I have just read.  Any exhibits admitted into evidence will also be placed in the jury room for your review.

When you go to the jury room, you should first select a foreperson, who will help to guide your deliberations and will speak for you here in the courtroom.  [The second thing you should do is review the instructions.  Not only will your deliberations be more productive if you understand the legal principles upon which your verdict must be based, but for your verdict to be valid, you must follow the instructions throughout your deliberations.  Remember, you are the judges of the facts, but you are bound by your oath to follow the law stated in the instructions.]

To reach a verdict, whether it is guilty or not guilty, all of you must agree.  Your verdict must be unanimous on each count of the Superseding Indictment.  Your deliberations will be secret.

You will never have to explain your verdict to anyone.  You must consult with one another and deliberate in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to reexamine your own opinions and change your mind if convinced that you were wrong.  But do not give up your honest beliefs solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times, you are judges—judges of the facts.  You must decide whether the government has proved the defendants' guilt beyond a reasonable doubt.

A form of verdict has been prepared for your convenience.

In a moment the bailiff will escort you to the jury room and provide each of you with a copy of the instructions that I have just read.  Any exhibits admitted into evidence will also be placed in the jury room for your review.  The foreperson will write the unanimous answer of the jury in the space provided for each count of the Superseding Indictment, either guilty or not guilty.  At the conclusion of your deliberations, the foreperson should date and sign the verdict.

If you need to communicate with me during your deliberations, the foreperson should write the message and give it to the bailiff.  I will either reply in writing or bring you back into the court to respond to your message.  Under no circumstances should you reveal to me the numerical division of the jury.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.23 (2021 ed.) (updated Apr. 2, 2021).

**Stipulated Instruction No. 37: Communication with the Court**

If you want to communicate with me at any time during your deliberations, please write down your message or question and give it to [the marshal] [the bailiff] [my law clerk], who will bring it to my attention.  I will respond as promptly as possible, either in writing or by having you return to the courtroom so that I can address you orally.  I caution you, however, that with any message or question you might send, you should not tell me any details of your deliberations or indicate how many of you are voting in a particular way on any issue.

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial and sentencing proceedings, was meant to suggest to you what I think your decision should be.  That is your exclusive responsibility.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.44 (2021 ed.) (updated Apr. 2, 2021).

**[Disputed Instruction No. 38: Modified *Allen* Instruction (Offered by the United States)]**

Members of the jury, I am going to ask that you return to the jury room and deliberate further.  I realize that you are having some difficulty reaching a unanimous agreement, but that is not unusual.  Sometimes, after further discussion, jurors are able to work out their differences and agree.

This is an important case.  If you should fail to agree upon a verdict, the case is left open and must be tried again.  Obviously, another trial would require the parties to make another large investment of time and effort, and there is no reason to believe that the case can be tried again by either side better or more exhaustively than it has been tried before you.

You are reminded that the defendant is presumed innocent, and that the government, not the defendant, has the burden of proof and it must prove the defendant guilty beyond a reasonable doubt.  Those of you who believe that the government has proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the evidence is really convincing enough, given that other members of the jury are not convinced.  And those of you who believe that the government has not proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the doubt you have is a reasonable one, given that other members of the jury do not share your doubt.  In short, every individual juror should reconsider his or her views.

It is your duty, as jurors, to consult with one another and deliberate with a view toward reaching an agreement, if you can do so without violence to individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations do not hesitate to reexamine your

own views and change your opinion if you are convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

What I have just said is not meant to rush or pressure you into agreeing on a verdict. Take as much time as you need to discuss things.  There is no hurry.

I will ask now that you retire once again and continue your deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the instructions I have previously given you.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.42 (2021 ed.) (updated Apr. 2, 2021).

**[Disputed Instruction No. 38: Modified *Allen* Instruction (Offered by Defendants)]**

Defendants oppose this instruction in its entirety on the grounds that it is premature for the reasons explained in their accompanying memorandum.

**[Disputed Instruction No. 39: Partial Verdict Instruction (Offered by the United States)]**

Members of the Jury:

(1) You do not have to reach a unanimous agreement on all the charges or all defendants before returning a verdict on some of the charges. If you have reached a unanimous agreement on some of the charges as to one of the defendants, you may return a verdict on those charges or that defendant and then continue deliberating on the others.

(2) If you do choose to return a partial verdict, that verdict will be final. You will not be able to change your minds about it later on.

(3) Your other option is to wait until the end of your deliberations, and return all your verdicts then. The choice is entirely yours.

---

**Authority**

Tenth Circuit Pattern Jury Instruction No. 1.43 (2021 ed.) (updated Apr. 2, 2021).

**[Disputed Instruction No. 39: Partial Verdict Instruction (Offered by Defendants)]**

Defendants oppose this instruction in its entirety on the grounds that it is premature for the reasons explained in their accompanying memorandum.