IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 21-cr-00229-RBJ

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. DAVITA INC.,
2. KENT THIRY,

    Defendants.

## UNITED STATES' MEMORANDUM IN SUPPORT OF DISPUTED PROPOSED JURY INSTRUCTIONS

The United States files this memorandum in support of its proposed, disputed jury instructions, and in opposition to Defendants' proposed, disputed instructions.

## ARGUMENT

**1. Preliminary Instruction**

The United States opposes Defendants' "Preliminary Instruction." On the substantive portions of the instruction, the United States' proposed "Substantive Preliminary Jury Instruction" correctly characterizes the charges and accurately states the law for the reasons explained in the sections below, and does not purport to provide evidence to the jury as Defendants' does (e.g., "Kent Thiry is the former CEO of DaVita and is now retired…"). The Defendants' proposed preliminary instruction incorrectly characterizes the charges, and also improperly seeks to have the Court provide its imprimatur upon its "theory of defense" by including it here.[1] As discussed further in section 15 below, such an instruction is contrary to

---

[1] The United States incorporates by reference the arguments raised in its opposition to Defendants' motion *in limine* for a substantive preliminary jury instruction.  ECF No. 124.

1

Tenth Circuit precedent even at the close of evidence; Defendants offer no authority for providing such an instruction at the opening of the case. On the procedural aspects of Defendants' proposed preliminary instruction, the United States defers to the Court on how to provide routine preliminary information to the jury.

### 2. Impeachment by Prior Inconsistencies Instruction

The United States' proposed "Impeachment by Prior Inconsistencies Instruction" is the Tenth Circuit pattern instruction. Defendants have instead proposed an unspecified "Impeachment" instruction; however, the United States' position is that the Tenth Circuit pattern is best suited to handle this issue.

### 3. Immunity Instruction

The United States' "Immunity" instruction is consistent with Tenth Circuit pattern instruction and with similar instructions given by the Court in prior cases. The United States made two substantive modifications to the pattern instruction: First, the proposed instruction explains that nonprosecution agreements are included in the term "immunity agreements," consistent with the Pattern's instruction to identify the nature of agreements at issue. Second, the proposed instruction tells the jury that it is permissible for the government to enter into immunity agreements and that its reasons for doing so are not relevant to the jury. This is consistent with similar instructions the Court has given in the plea-agreement context. *See* Final Jury Instructions, Instr. No. 6, *United States v. Gerhmann*, No. 1:15-cr-00303 (D. Colo. Nov. 2, 2018), ECF 161 ("Plea bargaining is lawful and proper, and the rules of this court expressly provide for it."); Final Jury Instructions, Instr. No. 3, *United States v. Coddington*, No. 1:15-cr-00383 (D. Colo. July 25, 2018), ECF 234 (same).

Defendants' proposed immunity instruction deviates from the pattern in two meaningful ways. First, it identifies the specific witnesses who testified under some form of immunity agreement. Doing so unnecessarily complicates an otherwise simple instruction. Defendants, of course, may seek to highlight immunity agreements in their arguments to the jury, but there is no need to deviate from the pattern and single out particular witnesses in the instruction.

Second, Defendants omitted the following sentence from the pattern instruction: "His testimony alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilt even though it is not corroborated or supported by other evidence." Tenth Circuit Pattern Jury Instruction No. 1.14 (2021 ed.) (updated Apr. 2, 2021). Defendants cite the immunity instruction given in *United States v. Penn* as support for their instruction omitting that important aspect of the Tenth Circuit pattern instruction. The reason that *Penn* omitted that line, however, does not apply in this case. In *Penn*, a ten-defendant case, the cooperating witness's testimony only specifically related to a subset of the defendants. Thus, while sufficient alone to find that the charged conspiracy existed and to satisfy the interstate commerce element as to all ten defendants, the cooperating witness's testimony could not, by itself, support guilt on the knowingly joined element for every defendant. *See* Charge Conference Tr. at 38, *United States v. Penn*, No. 20-cr-152 (D. Colo. Dec. 7, 2021). Here, however, the United States anticipates that its witnesses testifying under immunity agreements *can* provide testimony sufficient to support a guilty verdict for Thiry and DaVita on the counts relevant to their testimony.

4. **Summary/Overview Witness Instruction**

The United States opposes Defendants' "Summary/Overview Witness" instruction, and incorporates arguments the United States raised in its Opposition to Defendants' Supplemental Motions *In Limine*. ECF No. 173. Defendants' instruction incorrectly assumes that any

summary witness the United States calls will only provide summary testimony. To the contrary, any such witness may provide lay opinion testimony as well as summary testimony. For example, a law enforcement witness may provide testimony regarding the course of an investigation, or facts learned during an investigation, which is properly considered lay opinion testimony. *See United States v. Marquez*, 898 F.3d 1036, 1048–50 (10th Cir. 2018). Thus, Defendants' instruction that the witness's testimony "serves merely as a summary of evidence" is incorrect. In addition, it is premature to address summary testimony at this time. Should any summary testimony be admitted at trial, the parties may address the issue at the charge conference.

### 5. Multiple Defendants Instruction

The United States' "Multiple Defendants" instruction is consistent with the Tenth Circuit pattern instruction. The United States modified the pattern to inform the jury that it may consider Thiry's actions and intent when determining DaVita, Inc.'s guilt. This is a basic proposition of agency law, as explained in the United States' "Corporate Defendant" instruction, which Defendants have agreed to. *See also, e.g.*, *United States v. Am. Radiator & Standard Sanitary Corp.*, 433 F.2d 174, 204–05 (3d Cir. 1970). Without this explicit cross-reference, jurors may be confused by the two instructions that could otherwise appear to facially conflict.

### 6. Section 1 of the Sherman Act Instruction

The United States' "Section 1 of the Sherman Act" instruction benignly and accurately states the purpose of the Sherman Act and is consistent with similar instructions given in similar criminal cases. *See, e.g.*, Final Jury Instructions, Instr. No. 16, *United States v. Penn*, 1:20-cr-00152 (D. Colo. Dec. 16, 2021), ECF No. 921. In addition, the United States' instruction briefly and accurately describes the three counts charged in this case.

### 7. Elements of the Offense Instruction

Defendants' "Elements of the Offense" instruction mischaracterizes the indictment by inserting "market" language that does not appear in the indictment and can only serve to confuse the jury about the government's burden. The Superseding Indictment charged Defendants in Count One with a conspiracy to "allocate senior-level employees by not soliciting each other's senior-level employees across the United States," SI ¶ 10, and in Counts Two and Three with conspiracies to "allocate employees by" Companies B and C "not soliciting DaVita's employees." *Id.* ¶¶ 18, 26.

With respect to the first element, the United States' proposed instruction correctly characterizes the conspiracy charged as a "conspiracy between two or more competitors for employees to allocate employees as alleged in the Superseding Indictment." As set forth below, the "market" analysis here is quite limited: the United States needs to prove the conspirators were competitors for employees, not that they (or their employees) comprised the whole market nor that they had market power in, or allocated, a precisely defined market.

As for the second element, the United States' instruction is consistent with Tenth Circuit law. The Court, in denying Defendants' motion to dismiss, stated that the United States "will have to prove beyond a reasonable doubt that defendants entered into an agreement with the purpose of allocating the market for senior executives (Count 1) and other employees (Counts 2 and 3)." Order at 18–19, ECF No. 132. But as the Court explained in its Order, its "decision makes no novel construction of Section 1 of the Sherman Act." *Id.* at 18. It is well established that the intent to enter the per se unlawful agreement—here, the agreement to allocate employees—is sufficient, and separate proof of an anticompetitive or other illicit intent is not

5

required.[2]  *See United States v. Suntar Roofing, Inc.*, 897 F.2d 469, 479–80 (10th Cir. 1990) (requisite intent can be proved by showing that the defendants knowingly joined and participated in the conspiracy to allocate customers); *United States v. Metro. Enters., Inc.*, 728 F.2d 444, 449–50 (10th Cir. 1984) (intent to restrain competition satisfied by intent to rig bids) (citations omitted).

Last, the United States' proposed instruction correctly states the third element of the charged Sherman Act offense: "The conspiracy *involved* interstate trade or commerce." (emphasis added). Defendants' construction does not capture the alternate bases to satisfy this element, as described further below in the discussion of the Interstate Commerce instruction.

### 8. Employee Allocation Instruction

The United States' "Employee Allocation" instruction correctly states the law and correctly characterizes the Superseding Indictment's allegations (see section 7, *supra*). And, as the Court confirmed in its order denying Defendants' motion to dismiss, the conspiracies "as charged in the indictment" are what the United States will need to prove at trial. *See* Order at 19.

The United States' proposed employee allocation instruction is consistent with market allocation instructions that have been given in this circuit. *Compare United States v. Suntar Roofing, Inc.*, 709 F. Supp. 1526, 1536 (D. Kan. 1989), *aff'd*, 897 F.2d 469 (10th Cir. 1990) (quoting the full customer allocation instruction, which provides, in part, "A conspiracy to allocate customers is an agreement or understanding between competitors not to compete for the business of a particular customer or customers."), *with* United States' Proposed "Conspiracy to Allocate Employees" Instr. ("An employee-allocation conspiracy is an agreement or mutual

---

[2] Defendants may attempt to show that the agreement was not "naked" by asserting an ancillarity defense at trial, but that does not change the underlying element that the United States must prove at trial. Defendants have not proposed any instruction on an ancillarity defense.

understanding among competitors for employees not to compete with one another for the services of an employee or set of employees. . . . An employee-allocation conspiracy can take various forms. Such a conspiracy exists, for example, where two or more competitors agree to not solicit each other's existing or prospective employees for purposes of allocating employees.").

The United States' proposed instruction is also consistent with market allocation instructions given in criminal cases in other circuits. For example, in *United States v. True*, a Sherman Act prosecution of a conspiracy to allocate customers, the court instructed the jury: "Customer allocation is an agreement or understanding between competitors not to compete for the business of a particular customer or customers. Customer allocation exists, for example, where two or more competitors agree not to solicit or sell to the customer or customers to which the other sells." Trial Tr. 2092, No. 4:97-cr-11 (W.D. Ky. Sept. 17, 1998), ECF No. 246. The United States' proposed instruction mirrors the *True* instruction, just as it mirrors the *Suntar Roofing* instruction. Instructions in other allocation cases likewise support the United States' proposed language. *See, e.g.*, Trial Tr. 3332-34, *United States v. Alliance Nat'l Ltd. P'ship*, No. 1:08-cr-0068 (N.D. Ohio June 24, 2009) ("Every conspiracy to allocate customers is unlawful, regardless of the motives of the parties or any economic justification."); Instructions at 28, *United States v. Tokai Kogyo Co.*, No. 1:16-cr-63, (S.D. Ohio Nov. 6, 2017), ECF No. 235.

Defendants' proposed instruction contravenes precedent and contains several factual and legal errors. The first sentence of Defendants' proposed instruction misstates the charges in the indictment by suggesting that the government has "alleged that Defendants allocated markets for senior executives . . . ." As set forth above, the grand jury charged that Defendants allocated employees. SI ¶¶ 10, 18, 26. The Court's order finding that the alleged employee-allocation

7

agreements constitute per se unlawful market allocations under the Sherman Act does not transform the allegations in the indictment into charges about "markets."

Defendants over-read this Court's ruling as suggesting that the United States must prove a conspiracy to "allocate a market for employees," as opposed to a conspiracy among competitors for employees to allocate employees or senior-level employees—thus, Defendants erroneously imply that the United States must define a "market." But, as the Court has already held, the Superseding Indictment charged a per se offense—namely, a conspiracy to allocate employees, Order at 17, ECF No. 132, and it is well established that for per se offenses, the government is not required to precisely define a market. As the Supreme Court recently explained, because per se illegal restraints, like the one at issue here, "involve agreements between competitors not to compete in some way," there is no need "to precisely define the relevant market to conclude that these agreements were anticompetitive." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 n.7 (2018) (citing *FTC v Ind. Fed. Dentists*, 476 U.S. 447, 460–61 (1986); *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 648–49 (1980) (per curiam)). Rather, it is enough that the government established that the conspirators are actual or potential competitors for employees, as the government's proposed instruction requires. *See Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 49 (1990) (per curiam).

The only "market" showing that the United States must establish is that the Defendants and their co-conspirators were horizontal competitors for employees. *See Suntar Roofing*, 897 F.2d at 473 (holding that "an agreement to allocate or divide customers between competitors within the same horizontal market, constitutes a per se violation of § 1 of the Sherman Act."). The court in *Suntar Roofing* did not speak of allocating "the market" for customers; instead it referenced a conspiracy to allocate customers. *Id.*; *see also United States v. Topco Assocs., Inc.*,

405 U.S. 596, 608 (1972) ("[o]ne of the classic examples of a per se violation of § 1 is an agreement between competitors at the same level of the market structure to allocate territories in order to minimize competition"); *United States v. Goodman*, 850 F.2d 1473, 1476 (11th Cir. 1988) ("customer allocation agreement alone is a per se violation of 15 U.S.C. § 1") (citing *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1090 (5th Cir. 1978)); *United States v. Cooperative Theatres of Ohio, Inc.*, 845 F.2d 1367, 1372 (6th Cir. 1988) ("customer allocation . . . is the type of 'naked restraint' which triggers application of the per se rule of illegality"). And Defendants' reliance on the statement in *Midwest Underground Storage, Inc. v. Porter*, 717 F.2d 493 (10th Cir. 1983), is unavailing. The court's statement that the "essence of a market allocation violation, however, is that competitors apportion the market among themselves and cease competing in another's territory or for another's customers," *id.* at 497 n.2, does not require a market definition. And, in any event, *Suntar Roofing* clarified that line from *Midwest Underground Storage*, when holding that a conspiracy to "allocate or divide customers" is a per se violation of the Sherman Act without requiring the United States to precisely define the market. *See Suntar Roofing*, 897 F.2d at 473 (citing *Midwest Underground Storage*, 717 F.2d at 497 n.2); *accord United States v. Kemp & Assocs., Inc.*, 907 F.3d 1264, 1272–73 (10th Cir. 2018).

Nor must the United States prove that the conspirators or their employees comprised the whole market or that the agreement allocated the entire "market" as Defendants' instruction erroneously suggests. Defendants' instruction states that a non-solicitation agreement does not constitute market allocation "where these companies' employees do not comprise the entire market of employees of their services." To the contrary, there is no requirement that the conspiring competitors have market power or control the entire employment market. *See United*

9

*States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940) ("The group making those agreements may or may not have power to control the market."). Nor is there any requirement that the unlawful agreement allocate all or even most employees. *See Kemp & Assocs.*, 907 F.3d at 1277 ("Nor does it matter that the alleged [allocation] agreement would only affect a small number of potential customers.").

Last, Defendants' instruction improperly seeks to insert language that is inapplicable in light of the Court's conclusion as a matter of law that the indictment charged a per se offense. First, Defendants' instruction states that "[n]ot every non-solicitation agreement, however, would allocate a market as charged in the indictment." While certainly the Court provided that background reasoning for its ruling on the motion to dismiss, this statement is superfluous for a jury instruction and would only serve to confuse the jury because the Court found that each conspiracy charged in the indictment, if proven, does constitute a per se unlawful market allocation. ECF No. 132 at 8. The United States' proposed instruction makes clear that it must prove "the existence of a conspiracy to allocate employees" and that such a conspiracy exists "where two or more competitors agree to not solicit each other's existing or prospective employees for purposes of allocating employees."

Second, Defendants seek an instruction that "[a] non-solicitation agreement does not constitute market allocation where the agreement permits employees to transfer between the companies who entered into the agreement," citing *Bogan v. Hodgkins*, 166 F.3d 509 (2d Cir. 1999) as support. However, *Bogan* is inapt since that case applied the rule of reason. *Id.* at 511, 515. The Court has already held that the conspiracies charged in the Superseding Indictment are per se offenses; thus the rule of reason analysis from *Bogan* carries no weight. Order at 16, ECF No. 132. And there is no requirement that a per se unlawful agreement eliminate all competition.

*See Cadillac Overall Supply Co.*, 568 F.2d at 1088 (holding that "their agreement to suppress all competition as to one phase of their business, i.e., old customers, should be per se, illegal irrespective of their competition for new customers."); *Cooperative Theatres of Ohio, Inc.*, 845 F.2d at 1373 (holding that a nonsolicitation agreement was per se unlawful even where it allowed customers who were not solicited to switch suppliers).

### 9. Alleged Notice and Confirmation Requirements Instruction

The United States opposes Defendants' proposed "Alleged Notice and Confirmation Requirements" instruction. Defendants' attempt to constrict the jury to considering notice and confirmation evidence "solely as evidence of whether there were non-solicitation agreements" is contrary to the Court's order on the motion to dismiss and black letter conspiracy law. *See* Order at 8, ECF No. 132 (noting that the notification and other means and methods "outline the ways that the agreement made it difficult for employees to move between co-conspirator companies to the point where the market was allocated. They support the allegation that the purpose and effect of the agreement was to allocate the market.") The jury may consider evidence that Defendants and their co-conspirators monitored compliance with the employee-allocation agreements and informed employees they must tell their current boss before an application can be considered as evidence of Defendants' and their conspirators' intent and efforts to allocate employees to their existing employer. There is no basis for Defendants' proposed instruction, which would only serve to confuse the jury.

Defendants' proposed instruction also mischaracterizes the indictment. The indictment identified notification mechanisms as among the things done by the conspirators "[f]or the purpose of forming and participating in the charged conspiracy." *See* SI ¶¶ 11, 19, 27. Defendants provide no legal authority for a proposed instruction that suggests these actions are

11

lawful and separate from the conspiracy, and there is none because the means and methods of the conspiracy, that is the actions taken in furtherance of it, *are* a part of the conspiracy.  It is also well established that a conspiracy may be effectuated by otherwise lawful acts, and thus acts otherwise "innocent, indeed, of themselves," take on their "criminal taint from the purpose for which they were done."  *Hyde v. United States*, 225 U.S. 347, 360 (1912).  Thus, if they are done for purposes of allocating employees as alleged, then these actions are unlawful.  *See Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946) ("Acts done to give effect to the conspiracy may be in themselves wholly innocent acts.  Yet, if they are part of the sum of the acts which are relied upon to effectuate the conspiracy which the statute forbids, they come within its prohibition.").

### 10. Knowingly Joined Instruction

The United States' "Knowingly Joined" instruction includes important information for the jury that Defendants omit from their instruction.[3]  Most importantly, the United States' proposed instruction includes the following paragraph, which clarifies the requisite intent for the jury:

> As I have already instructed you, an employee-allocation conspiracy is in itself an unreasonable restraint of trade and illegal; the government does not have to prove that the defendants specifically intended to restrain trade or produce anticompetitive effects.  The intent to restrain trade is satisfied with the finding of intent to allocate employees.  Therefore, you must disregard whether defendants knew allocating employees was prohibited, as well as whether there were possible good motives.  You must disregard any questions on the reasonableness, or economic impact, of the defendants' actions.

This instruction accurately reflects the holdings of the Tenth Circuit (and other circuits) that "[w]hile intent to restrain competition is an element of a criminal violation of the Sherman Act,

---

[3] Defendants' proposed instruction also incorrectly refers to the objective of the conspiracies as allocating "the market" rather than "allocating employees"—the United States incorporates its arguments on that point from preceding sections.

we think the proof of the requisite intent in the instant case was satisfied by showing that the appellants knowingly joined and participated in a conspiracy to rig bids." *Metro. Enterprs., Inc.*, 728 F.2d at 449–50 (citation omitted); *see also United States v. Brown*, 936 F.2d 1042, 1046 n.2 (9th Cir. 1991) (collecting cases). The United States incorporates its authority provided in its proposed jury instruction for the remainder of its instruction on disregarding good intentions and impact, as well as the authorities in its Omnibus Motions *In Limine*, ECF No. 107, filed on December 17, 2021.

Defendants' proposed instruction also differs from the United States' proposal by referring to "ignorance." Def. Instr. "Knowingly" ("To act "knowingly" means to act voluntarily and intentionally, and not because of *ignorance*, mistake, or accident.") (emphasis added). This language is not found in the Tenth Circuit Pattern language ("Knowingly—Deliberate Ignorance"), and its insertion here risks confusing the jury, since it is no defense to assert that the Defendants were ignorant of the law. *See* Stipulated Good Faith Instruction; United States' Omnibus Motions in Limine, ECF No. 107, filed on 12/17/21 and authorities therein.

## 11. On or About Instruction

The United States' "On or About" instruction correctly states Tenth Circuit law regarding the period of a conspiracy. Although the United States' proposed instruction deviates from the Tenth Circuit pattern "on or about" instruction, such deviation is appropriate in a conspiracy case like this one. The Tenth Circuit pattern refers to a date that "the crime was committed." Tenth Circuit Pattern Jury Instruction No. 1.18 (2021 ed.) (updated Apr. 2, 2021). A conspiracy, of course, is not committed on any particular dates, but rather over a period of time—in this case, a span of several years. The United States' proposed language reflecting the nature of a continuing crime is well grounded in Tenth Circuit law, *see United States v. Poole*, 929 F.2d 1476, 1482–83,

1182 & n.5 (10th Cir. 1991) (upholding jury instruction that "it is not necessary that the proof establish with certainty the exact date of the alleged offenses" because that instruction "has been approved by this Circuit on numerous occasions"), and, specifically, in Sherman Act cases within this circuit, *see In re Urethane Antitrust Litig.*, 2013 WL 2097346, at *9 (D. Kan. May 15, 2013), *amended*, 2013 WL 3879264 (D. Kan. July 26, 2013), *aff'd*, 768 F.3d 1245 (10th Cir. 2014) (in an antitrust case, "the jury was not required to find that a conspiracy existed for the entire period alleged by plaintiffs").

### 12. Statements Indicating Consciousness of Guilt Instruction

The United States' proposed "Statements Indicating Consciousness of Guilt" instruction is supported by similar instructions given in this district, as well as Tenth Circuit decisions. *See* Jury Instr. No. 34, *United States v. B&H Maint. and Constr., Inc.*, No. 07-cr-00090-WYD (D. Colo. June 19, 2008), ECF No. 319-10; *see also United States v. Ingram*, 600 F.2d 260, 262 (10th Cir. 1979) ("We have held that false exculpatory statements are admissible to prove consciousness of guilt and unlawful intent."); *United States v. Smith*, 833 F.2d 213, 218 (10th Cir. 1987) (rejecting defendant's argument that there was insufficient evidence linking him to the conspiracy in part because "[a] false exculpatory statement will support an inference of consciousness of guilt").

### 13. Interstate Commerce Instruction

The United States' "Interstate Commerce" instruction is a clearer and more complete articulation of the law than Defendants' proposed instruction. The United States' proposal is consistent with the Supreme Court's holdings that the Sherman Act goes "to the utmost extent of [Congress'] Constitutional power," *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 194 (1974) (quoting *United States v. Se. Underwriters Ass'n*, 322 U.S. 533, 558 (1944)), and thus Congress

"left no area of its constitutional power . . . unoccupied," *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 329 n.10 (1991); *see McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 246 (1980) (element requires a "demonstrable nexus" to interstate commerce).

The element is most accurately described as a conspiracy that "involved" interstate commerce (rather than "affected"), as this element may be satisfied by one of two standards: "flow" or "effects." *See McLain*, 444 U.S. at 242. For conspiracies in the "flow" of interstate commerce, the government does not need to prove any effect whatsoever. *Suntar Roofing*, 897 F.2d at 477. And the United States' instruction includes additional examples pertinent to the case at issue (e.g., "persons") that will aid the jurors in their understanding of this element. *See also United States v. Cargo Serv. Stations, Inc.*, 657 F.2d 676, 680 (5th Cir. 1981) ("The power of Congress includes the power to regulate the movement of persons through more than one state, for this movement is undeniably part of the intercourse that constitutes commerce. [I]f an action or practice of defendants affected the movement of persons from one state to another, it affected interstate commerce and is within the scope of the Sherman Act." (internal citations omitted)).

For the "effects" standard, Defendants' proposed instruction does not capture that such an effect is to be judged by the potential effect on interstate commerce, even if the conspiracy is wholly ineffective. *See Pinhas*, 500 U.S. at 330 (holding that "proper analysis focuses, not upon actual consequences, but rather upon the potential harm that would ensue if the conspiracy were successful"). Further, Defendants' proposed instruction incorrectly suggests that the element is met only if those "activities substantially and *directly* affect interstate commerce." Defs. "Interstate Commerce" Instr. (emphasis added). The Supreme Court, however, has made clear that direct effect is not required to satisfy the Sherman Act's interstate commerce element. *See*

15

*McLain*, 444 U.S. at 241–45; *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 744 (1976). Last, the United States' proposed instruction clarifies for the jury that the element is satisfied for each count based on either the Defendants' or the co-conspirators' activities. *See Park v. El Paso Bd. of Realtors*, 764 F.2d 1053, 1063 (5th Cir. 1995).

### 14. Statute of Limitations Instruction

The United States opposes a "Statute of Limitations" instruction. There is no basis to give such an instruction unless Defendants affirmatively raise a statute of limitations defense at trial and there is a factual predicate for it. *United States v. DeLia*, 906 F.3d 1212, 1217 (10th Cir. 2018). Even setting that aside, Defendants' instruction is incorrect on the law and risks confusing the jury.

The Sherman Act is subject to a five-year statute of limitations. *See* 18 U.S.C. § 3282. Under Section 3282, "a statute-of-limitations defense becomes part of a case only if the defendant puts the defense in issue." *Musacchio v. United States*, 577 U.S. 237, 248 (2016). "When a defendant presses a limitations defense," the Court held, "the Government *then* bears the burden of establishing compliance with the statute of limitations by presenting evidence that the crime was committed within the limitations period or by establishing an exception to the limitations period." *Id.* (emphasis in original). On the other hand, "[w]hen a defendant fails to press a limitations defense, the defense does not become part of the case and the Government does not otherwise have the burden of proving that it filed a timely indictment." *Id.*; *see also DeLia*, 906 F.3d at 1217 ("[A] defendant must affirmatively and timely raise a statute-of-limitations defense."). Thus, in order to warrant giving a statute of limitations instruction, Defendants must affirmatively make it an issue at trial.

Defendants' proposed statute of limitations instruction incorrectly states that the United States must prove "one or more of members of the conspiracy performed *some act* in furtherance of the conspiracy" during the limitations period. Defs. Proposed "Statute of Limitations" Instr. (emphasis added). That language is incorrect because the Sherman Act does not require proof of an overt act. *See Socony-Vacuum Oil Co.*, 310 U.S. at 224 n.59. "[F]or conspiracy statutes that do not require proof of an overt act, the indictment satisfies the requirements of the statute of limitations if the conspiracy is alleged to have continued into the limitations period." *United States v. Fishman*, 645 F.3d 1175, 1191 (10th Cir. 2011); *see also United States v. Spero*, 331 F.3d 57, 60 (2d Cir. 2003). Likewise, at trial, proof that the conspiracy continued within the limitations period suffices, unless the defendant established his earlier withdrawal. *Smith v. United States*, 568 U.S. 106, 113–14 (2013).

In addition, Defendants' reference to the five-year statute of limitations risks jury confusion given the tolling agreements Defendants entered into with the United States. The jury may see reference to the five-year limitations period and wonder why the dates included in the instruction are not exactly five years prior to the Original or Superseding Indictment. Thus, if an instruction were warranted by evidence developed at trial, the United States proposes to reference only a "statute of limitation," rather than a "five-year statute of limitations," and instruct the jury what the relevant date is for each count.

## 15. Defense Theory of the Case Instruction

The United States opposes Defendants' proposed "Defense Theory of the Case" instruction, which does nothing more than ask the Court to put its imprimatur on Defendants' view of the evidence. *United States v. Grissom*, 44 F.3d 1507, 1513 (10th Cir. 1995) (explaining that the Court properly rejected a defense-theory-of-the-case instruction when it "could have led

17

the jury to believe that the district court was putting its imprimatur on Defendant's factual theory of the case"); *see also United States v. Chadwick*, 554 F. App'x 721, 724 (10th Cir. 2014) ("His proposed instruction on the theory of defense would have served no purpose but to put the court's imprimatur on [the defendant's] interpretation of the evidence."). Defendants may seek to make those arguments in closing, but they are not appropriate for a jury instruction. *See United States v. Davis*, 953 F.2d 1482, 1492 (10th Cir. 1992) ("[S]ummaries of the evidence in the light most favorable to the defense [are] more appropriate for closing argument." (footnote omitted)).

## CONCLUSION

For the reasons stated above, the Court should instruct the jury using the United States' proposed instructions.

DATED: February 22, 2022

> Respectfully submitted,
>
> /s/ Megan S. Lewis
> Megan S. Lewis, Assistant Chief
> Terence A. Parker, Trial Attorney
> Sara M. Clingan, Trial Attorney
> Anthony W. Mariano, Trial Attorney
> William J. Vigen, Trial Attorney
> U.S. Department of Justice, Antitrust Division
> Washington Criminal II Section
> 450 Fifth Street, N.W.
> Washington, D.C. 20530
> Tel: 202-598-8145
> FAX: 202-514-9082
> E-mail: megan.lewis@usdoj.gov

## CERTIFICATE OF CONFERENCE

In compliance with Local Rule 7.1(a), the United States has conferred with counsel for DaVita and Thiry regarding the United States' proposed jury instructions. Defendants oppose this memorandum.

## CERTIFICATE OF SERVICE

On February 22, 2022, I filed this document with the Clerk of the Court using CM/ECF, which will serve this document on all counsel of record.

<u>/s/ Megan S. Lewis</u><br>
Megan S. Lewis<br>
Assistant Chief<br>
U.S. Department of Justice