## **Preliminary Instruction**

Members of the Jury: At the end of the trial, I will give you detailed guidance on the law and on how you will go about reaching your decision. But now I want to give you some preliminary information about what the issues are before we dive into this case.

This criminal case was brought by the U.S. Department of Justice's Antitrust Division, which I will sometimes refer to as the government or the prosecution. The defendants are DaVita, Inc. and DaVita's former Chief Executive Officer, Kent Thiry. Mr. Thiry is now retired from the company.

Charges in criminal cases are brought in what is called an Indictment. In this case the indictment charges the defendants with violations of a federal statute referred to as the Sherman Act. The Sherman Act addresses what are sometimes called antitrust violations, basically meaning that certain types of business combinations, conspiracies or agreements are illegal because they unreasonably restrain trade or competition.

You will hear the phrase "market allocation agreement." An example of a market allocation agreement would be if two companies who sell similar products agree not to compete for the business of a particular customer or customers for such products, thereby eliminating competition for customers that might reduce prices. Such a conspiracy would be illegal. This case does not charge any allocation of the market for customers. Rather, in this case the government alleges that the defendants conspired with three competitor companies to allocate the market for employees. The defendants deny the claim.

The indictment has three counts. Count One charges that defendants conspired with Surgical Care Affiliates, another health care company, to allocate the market for senior-level

employees beginning at least as early as February 2012 and continuing at least as late as July 2017.  The government charges that the conspiracy was implemented by means of various informal agreements and understandings whereby the two companies agreed not to solicit each other's senior-level employees, and in addition, they would not consider an application from one of the other company's senior-level employees unless that person first informed his or her employer that he or she was seeking other employment.  The government claims that the purpose of the conspiracy was to allocate the market for the companies' senior-level employees by suppressing meaningful competition between them for such employees.

Defendants deny the charge.  They claim that the purpose of the non-solicitation agreements was not to allocate the market for senior executives.  They argue that the purpose was to help the companies compete effectively in the health care industry.  As evidence, they note that senior executives did move back and forth between the companies.

Count Two of the indictment charges the defendants with a similar conspiracy with a different company, Hazel Health, although this count pertains to the market for DaVita employees, and charges that it began as early as April 2017 and continued at least through June 2019.

Count Three of the indictment charges the defendants with a similar conspiracy with a third company, Radiology Partners, to allocate the market for DaVita employees beginning at least as early as November 2013 and continuing until at least as late as June 2019.

Again, DaVita and Mr. Thiry deny the charges.  The indictment is not evidence of guilt.  The government has the burden to try to prove the charges in the three counts by presenting evidence that will convince the jury, beyond any reasonable doubt, that the charges are true.  The

defendants have no burden to prove anything, because they are presumed by the law to be innocent. The defendants certainly may produce evidence of their own if they wish to do so, but the only burden of proof in the case will always remain with the government.