# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. 21-cr-0229-RBJ

UNITED STATES OF AMERICA,

          Plaintiff,

v.

   1. DAVITA INC.,
   2. KENT THIRY,

          Defendants.

_____

## DEFENDANTS' PROPOSED JURY INSTRUCTIONS
## FOLLOWING CHARGE CONFERENCE

_____

In light of the Court's tentative rulings at the charge conference earlier today, defendants respectfully tender edits to the Court's draft instruction on intent (Instruction No. 17). Defendants also tender an alternate instruction on market allocation (Instruction No. 16) to be used instead of the Court's draft instruction, and an instruction on notice (Instruction No. XX) that was previously tendered (*see* ECF 174 at 65). Defendants respectfully renew and preserve their prior objections and requests.[1]

---

[1] *See* ECF 49 (Defendants' Joint Motion to Dismiss); ECF 72 (Defendants' Joint Reply in Support of Motion to Dismiss); ECF 83 (Defendants' Joint Renewed Motion to Dismiss); ECF 174 (Joint Set of Proposed Final Jury Instructions); ECF 175 (Brief by DaVita Inc. re Proposed Jury Instructions); ECF 229 (Revised Joint Set of Proposed Final Jury Instructions); ECF 242 (Response by DVA to Courts Proposed Market Allocation Jury Instruction); ECF 248 (Defendants' Reply to the United States' Brief on Jury Instructions).

## Instruction No. 16[2]

The first element of the offense requires the government to prove that defendants entered into horizontal market allocation agreements. To allocate means to divide.

The government alleges that Defendants conspired to allocate the market for senior executives (Count 1) or DaVita employees (Counts 2 and 3) across the United States by entering into non-solicitation agreements. Not every non-solicitation agreement, however, would allocate a market as charged in the indictment. A horizontal market allocation requires cessation of meaningful competition in a market. Thus, the government must prove beyond a reasonable doubt that the defendants entered into a conspiracy that could actually allocate the market to a meaningful extent. The fact that a non-solicitation agreement may constrain the companies in recruiting each other's employees to some degree does not necessarily allocate the market for employees.

**Authorities:**

**Proposed Language:** Order Resolving Disputes on Proposed Jury Instructions, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Mar. 25, 2022), Dkt. 214 at 4, 8; *id.* at 6 (holding that "a horizontal market allocation requires cessation of 'meaningful competition' *in the allocated market*" (emphasis added)); Order on Defendants' Motion to Dismiss, United States v. DaVita et al., 21-cr-229 (D. Colo. Jan. 28, 2022), Dkt. 132 at 17 ("Here, the government has sufficiently alleged that defendants allocated the market with their non-solicitation agreement. It does not follow that every non-solicitation agreement or even every no-hire agreement would allocate the market and be subject to per se treatment. …What I conclude is that if naked non-solicitation agreements or no-hire agreements allocate the market, they are per se unreasonable."); Jury Instructions, Dkt. 1232, *In re: Wholesale Grocery Products Antitrust Litigation* (0:09-md-02090-ADM-TNL) (D. Minn) (Apr. 20, 2018) ("Allocate means to divide."); *In re: Wholesale Grocery Products Antitrust Litigation*, 957 F.3d 879 (8th Cir. 2020) (affirming "[a]llocate means to divide" instruction).

---

[2] Defendants' proposed Instruction No. 16 is virtually verbatim from their request in the parties' April 3, 2022 jointly filed proposed jury instructions. *See* ECF No. 229 at 37.

**The Market:** Order Resolving Disputes on Proposed Jury Instructions, *United States v. DaVita et al., 21-cr-229* (D. Colo. Mar. 25, 2022), Dkt. 214 at 2 ("The novelty of this case persuades me to depart from the instructions of customer allocation cases…. I am conscious and careful in this case not to enlarge the traditional 'market allocation' per se category.  Including the word "market" in descriptions of the offense ties the government's burden to the traditional per se category."), 2-3 (considering and rejecting *Suntar Roofing*), 3 ("Although the superseding indictment alleges an agreement 'to allocate employees,' its characterization of the agreement as a per se unlawful restraint of trade implies the allocation of a market for employees consistent with the per se category 'market allocation agreement.' I denied defendants' motion to dismiss on this basis."), 6 (holding that "a horizontal market allocation requires cessation of 'meaningful competition' in the allocated market" (emphasis added) and indicating that the government must prove, "in this case, a conspiracy to actually allocate"—i.e., a conspiracy to "ce[ase] [] 'meaningful competition' in the allocated market" (emphasis added)); *Bogan v. Hodgkins*, 166 F.3d 509, 515 (2d Cir. 1999) ("[E]xperienced NML agents do not comprise the entire set of suppliers of their services. Thus, while the Agreement may constrain General Agents to some degree, it does not allocate the market for agents to any meaningful extent."); *Les Shockey Racing, Inc. v. Nat' Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989) ("[R]emoval of one or a few competitors need not equate with injury to competition . . . [C]laimants must plead and prove a reduction of competition in the market in general, and not mere injury to their own positions as competitors in the market."); Order on Defendants' Motion to Dismiss, *United States v. DaVita et al.*, 21-cr-229 (D. Colo. Jan. 28, 2022), Dkt. 132 at 18-19 ("[A]t trial, the government will not merely need to show that the defendants entered the non-solicitation agreement and what the terms of the agreement were. It will have to prove beyond a reasonable doubt that defendants entered into an agreement with the purpose of allocating the market for senior executives (Count 1) and other employees (Counts 2 and 3). … Similarly, … the government will have to prove more than that defendants had entered into a non-solicitation agreement—it will have to prove that the defendants intended to allocate the market as charged in the indictment.").

Instructing jury that "market" is "market for employees or particular employees" would constitute reversible constructive amendment of indictment. *See United States v. Miller*, 891 F.3d 1220, 1231 (10th Cir. 2018) (vacating conviction and explaining that "constructive amendment occurs when the indictment alleges a violation of the law based on a specific set of facts, but the evidence and instructions then suggest that the jury may find the defendant guilty based on a different, even if related, set of facts").

**Instruction No. 17[3]**

The second element of the offense of conspiracy to allocate the market for employees violation listed in Instruction No. 14 is that defendant knowingly entered into the conspiracy with the purpose of allocating the market applicable to that conspiracy.

The term "knowingly" means to act voluntarily and intentionally, and not because of mistake or accident.

The term "with the purpose of" means to intend. To establish the second element as to Count 1, the government must prove beyond a reasonable doubt that Mr. Thiry and DaVita intended to allocate the market for senior level employees of DaVita and SCA when they entered into the alleged agreements and understandings with SCA and its Chief Executive Officer, Andrew Hayek. Likewise, to establish the second element as to Counts 2 and 3, the government must prove beyond a reasonable doubt that Mr. Thiry and DaVita intended to allocate the market for employees of DaVita when they entered into the alleged agreements and understandings with Hazel Health and its Chief Executive Officer, Josh Golomb (Count 2) and with Radiology Partners and its Chief Executive Officer, Richard Whitney (Count 3).

A conspiracy can have multiple purposes. Allocating the market need not have been the conspiracy's sole purpose for you to conclude that it was the conspiracy's purpose. However, the government must prove that allocation of the market was at least one of the ==primary== purposes that motivated defendants' actions.

---

[3] Defendants' proposed Instruction No. 17 is verbatim to the Court's proposed Instruction 17 discussed during the charging conference, except that defendants request the additional language highlighted yellow.

If defendants entered into an agreement or understanding with the intent to allocate the market, it is immaterial whether such an agreement or understanding was actually good for the company or even good for the market as a whole.  ==However, evidence of lack of harm or procompetitive benefits might be relevant to determining whether the defendants entered into an agreement to allocate the market and did so with the intent to allocate the market, as charged in the indictment, i.e., whether they entered into an agreement with purpose of allocating the market for senior executives (Count I) and other employees (Counts 2 and 3) across the United States.==  If there was, in fact, a conspiracy as charged in the indictment for the purpose of allocating the market, it was illegal.

**Authorities:**

**"Primary" purpose:**  *Zidell Expls., Inc. v. Conval Int'l*, Ltd., 719 F.2d 1465, 1471, 1469 (9th Cir. 1983) ("We believe it appropriate to apply a per se rule to cases in which the [defendant]'s primary motivation for its decision … is anticompetitive," and approving jury instructions that "The agreement or conspiracy need not be solely motivated by a desire to protect the [defendants] from … price competition. But this anti-competitive purpose must be a ***primary purpose*** in the parties' decision to enter into the agreement or conspiracy") (emphasis added), *abrogated on other grounds by The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148, 1156 (9th Cir. 1988); *see also Kelly v. United States,* 140 S. Ct. 1565, 1571-1574 (2020) ("But that property must play more than some bit part in a scheme: It must be an 'object of the fraud.' Or put differently, a property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme.").

**Intent:** Dkt. 210 at 3 (Order on Pending Motions) (evidence of lack of harm and procompetitive justification "might be relevant to the question whether the defendants entered into an agreement to allocate the market and did so with the intent to allocate the market, as charged in the indictment, i.e., whether they entered into an agreement with purpose of allocating the market for senior executives (Count I) and other employees (Counts 2 and 3)").

**Instruction No. XX**[4]

For Count 1, the government alleges that the defendants monitored compliance with the agreement not to solicit senior executives by requiring senior executives of DaVita and SCA who applied to the other company to notify their current employer that they were seeking other employment in order for their applications to be considered.

For Count 2, the government alleges that the defendants monitored compliance with the agreement that [Company B] would not solicit employees from DaVita by requiring employees of DaVita who reached out to [Company B] to notify DaVita that they were seeking other employment in order to be considered by [Company B].

For Count 3, the government alleges that the defendants monitored compliance with the agreement that [Company C] would not solicit employees from DaVita by requiring employees of DaVita who reached out to [Company C] to either confirm that they were actively pursuing other job opportunities or to notify DaVita that they were seeking other employment in order to be considered by [Company C].

The government has not charged that those alleged notice and confirmation requirements were market allocation agreements, nor has the government charged that such notice and confirmation requirements are illegal under the Sherman Act. You are instructed to consider evidence of any such notice and confirmation requirements solely as evidence of whether the parties attempted to monitor a non solicitation agreement and are not to consider whether such

---

[4] Defendants' proposed Instruction No. XX is verbatim to their request in the parties' February 22, 2022 jointly filed proposed jury instructions instruction. *See* ECF 174 at 65.

notice and confirmation requirements were the means by which Defendants conspired to allocate the market.

**Authorities:**

Indictment, *United States v. DaVita, Inc.*, No. 1:21-cr-00229-RBJ (D. Colo. Nov. 11, 2021), ECF No. 74 ¶¶ 10, 11(d)-(e), 18, 19(d)-(e), 26, 27(e)-(f). Defendants recognize that the Court has found that the "Indictment does not charge a label." *See* Order Resolving Motions *in Limine*, Dkt. 210 at 7. However, no court has ever found a notice agreement to be *per se* unlawful. Defendants therefore request this instruction to preserve the issue for appeal and because they believe this instruction is necessary to prevent a reversible constructive amendment of the indictment. *See United States v. Miller*, 891 F.3d 1220, 1231 (10th Cir. 2018).

Dated: April 12, 2022

Jeffrey E. Stone
Daniel Campbell
McDermott Will & Emery LLP
444 W Lake St.
Chicago, IL 60606
(312) 984-2064
jstone@mwe.com

Justin P. Murphy
McDermott Will & Emery LLP
500 North Capitol Street, NW
Washington, DC 20001-1531
(202) 756-8018
jmurphy@mwe.com

*Counsel for Defendant Kent Thiry*

Respectfully submitted,

/s/ *John F. Walsh III*
John F. Walsh III
Wilmer Cutler Pickering Hale & Dorr LLP
1225 17th Street, Suite 2600
Denver, CO 80220
(720) 274-3154
john.walsh@wilmerhale.com

John C. Dodds
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
(215) 963-4942
john.dodds@morganlewis.com

*Counsel for Defendant DaVita Inc.*

## CERTIFICATE OF SERVICE

I certify that on April 12, 2022, I filed the above document with the Clerk of the Court using CM/ECF, which will send electronic notification thereof to all registered counsel.

/s/ *John F. Walsh III*
John F. Walsh III